Joel G. MacMull (*Pending Admission Pro Hac Vice*)
Brian M. Block
**MANDELBAUM SALSBURG, P.C.**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-295-3652
jmacmull@lawfirm.ms
bblock@lawfirm.ms

Ty Clevenger (*Pending Admission Pro Hac Vice*)
212 S. Oxford Street #7D
Brooklyn, New York 11217
Tel: 979-985-5289
tyclevenger@yahoo.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD HENRY, <br><br> Plaintiff, <br><br> v. <br><br> FOX NEWS NETWORK, LLC and SUZANNE SCOTT, Individually, <br><br> Defendants. | Civil Action No. 21-cv-13167 <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff Edward Henry ("Plaintiff" or "Mr. Henry"), by his undersigned counsel, complains and states as follows upon information and belief as to all matters:

### THE PARTIES

1.      Plaintiff is a former employee of the Fox News Channel. He is a resident of the State of Maryland, and he resided within the state at all times relevant to this lawsuit.

2.     Defendant Suzanne Scott ("Ms. Scott") is the Chief Executive Officer of the Fox News Channel and Fox Business Channel, both of which are owned by Fox News Network, LLC. She is a resident of the State of New Jersey, and she resided within the state at all times relevant to this lawsuit.

3.     Fox News Network, LLC ("Fox News") is a limited liability company with a business addressed located at 1211 Avenue of the Americas, New York, New York 10036. Fox News regularly broadcasts its programing into the states of New Jersey and Maryland.

**JURISDICTION AND VENUE**

4.     This Court has original jurisdiction over this action pursuant to 28 U.S. Code § 1332 because the parties are residents of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. This Court has supplemental jurisdiction over Plaintiff's claims under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over the corporate defendant in that it is responsible for and participated in the unlawful activity described in this Complaint, including the publication as well as facilitating the unlawful conduct complained of herein, and regularly conducts business in the State of New Jersey.

6.     This Court has personal jurisdiction over the individual defendant Ms. Scott, in that she is an officer of the corporate defendant and, in her role, directed, assisted or endorsed the unlawful acts of the corporate defendant complained of herein and she is resident of the State of New Jersey.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3)

because the Defendants are subject to personal jurisdiction in this district.

## BACKGROUND FACTS

### A.  Introduction

8.     In the Fall of 2019, during a company-wide meeting with hundreds of employees, Ms. Scott effusively praised the character and integrity of Plaintiff, an award-winning correspondent and news anchor at Fox News Channel, because he donated part of his liver (and risked his own life) in order to save the life of his ailing sister.

9.     By December of that year, Ms. Scott announced that she was promoting Plaintiff to be co-anchor of the popular news show "American Newsroom." Within a few months of his promotion, however, Ms. Scott and Fox News turned against Plaintiff and abruptly fired him, publicly humiliating him in the process.

10.     In a public statement, Ms. Scott stated that Plaintiff was guilty of unspecified sexual misconduct, and she did so at a time when she knew, or should have known, that: (1) Plaintiff had been falsely accused of rape or serious sexual misconduct by a former Fox News employee; and (2) those false allegations would soon become public.

11.     Regrettably, Ms. Scott sandbagged Plaintiff with her statement, lending credence to the false allegations because she was trying to save her own career and burnish her image as a tough, no nonsense female executive who cleaned up Fox News.

12.     In reality, however, Ms. Scott had long been an instrument to cover up the existence of sexual misconduct at Fox News.

13.     Thus, Ms. Scott used Plaintiff as a scapegoat to divert attention away from her own sordid history at Fox News.

14.     On July 1, 2020, Ms. Scott and Fox News President Jay Wallace released the following statement concerning Mr. Henry:



Dear colleagues,

We would like to bring a very serious matter to your attention in an effort toward full transparency given the many actions we have taken to improve the culture here over the last four years.

On Thursday, June 25, we received a complaint about Ed Henry from a former employee's attorney involving willful sexual misconduct in the workplace years ago. We immediately retained an outside law firm (which has never represented FOX News in investigations or litigation) to independently investigate the claims. Ed was suspended the same day and removed from his on-air responsibilities pending investigation. Based on investigative findings, Ed has been terminated.

Rotating news anchors will co-anchor *America's Newsroom* from New York alongside Sandra Smith until a permanent replacement is named.

FOX News Media strictly prohibits all forms of sexual harassment, misconduct, and discrimination. We will continue striving to maintain a safe and inclusive workplace for all employees.

As all of you know, in January 2017 we overhauled our entire Human Resources operation and instituted extensive mandatory annual Inclusion and Harassment Prevention training which has since educated our entire workforce. We encourage any employee who has a sexual harassment, discrimination or misconduct complaint of any form to report it immediately, as we have said repeatedly over the last four years. Methods of reporting include contacting our HR team led by Executive Vice President Kevin Lord, or our Legal team led by Executive Vice President & General Counsel Lily Fu Claffee, or our anonymous 24/7 alert hotline. All contact information for Kevin and Lily, as well as the hotline number, can be found on Backstage in the employee handbook.

Thank you,
Suzanne & Jay

15.     The foregoing statement (hereinafter the "Statement") was referring to a June 25, 2020 draft of a complaint that falsely accused Plaintiff of raping a former Fox Business producer, Jennifer Eckhart.

16.     In reality, Plaintiff had never sexually harassed or assaulted Ms. Eckhart, and Ms. Scott had no reason to believe that he did.

17.     In court documents filed by Fox News after its issuance of the foregoing statement on July 1, 2020, the company noted that no one had ever complained about Plaintiff prior to Ms. Eckhart.

18.     Ms. Scott had every reason to know that Ms. Eckhart was lying about Plaintiff's alleged misconduct because he voluntarily provided texts, emails, and photographs proving that Ms. Eckhart had lied about Plaintiff. Ms. Scott also knew that Ms. Eckhart was lying about the reasons for her termination from Fox.

19.     Ms. Scott was fully aware of this evidence before she publicly smeared Plaintiff and portrayed him in a false light before millions of people.[1]

20.     Ms. Scott knew, or should have known, that a consensual affair between Plaintiff and Ms. Eckhart had ended in early 2017, more than three years before Ms. Eckhart levied the false accusations against Plaintiff.

21.     Ms. Scott's accusations about Plaintiff were all the more damaging because, ironically, she had such a well-known history of whitewashing actual instances of "willful sexual misconduct" by Fox News employees, including a widely-

---

[1]     In fact, Fox News has since acknowledged in court papers that Ms. Eckhart was asked pointblank during her June 12, 2020 exit interview whether she had ever been subjected to sexual misconduct, and she made no accusations of sexual misconduct whatsoever.

known affair between a subordinate and Fox News President Jay Wallace, *i.e.*, the same Jay Wallace who co-signed the public statement that defamed Mr. Henry. [2]

22.    Indeed, Ms. Scott has repeatedly covered up sexual misconduct by senior Fox News management.

23.    She protected and promoted Mr. Wallace, for example, despite the fact that he had a romantic relationship with a subordinate while he was still married.

24.    Worse still, Mr. Wallace had demonstrated favoritism toward his subordinate lover, and he was investigated by Fox News' Human Resources Department for having an inappropriate relationship with a subordinate.

25.    That investigation obtained unequivocal evidence confirming Mr. Wallace's illicit relationship and favoritism, but the incident was intentionally covered up by Ms. Scott, who, and incredibly, boasted in her July 1, 2020 Statement about her efforts toward "full transparency given the many actions we have taken to improve the culture here over the last four years."

26.    Obviously, Ms. Scott was not concerned about transparency where Mr. Wallace was concerned, nor was she concerned about transparency regarding the numerous other instances of sexual misconduct perpetrated by Fox News' senior personnel.

27.    As explained in a December 22, 2020 article published in *The Daily*

---

[2]    Plaintiff and Ms. Eckhart did not work together (as Fox News itself has acknowledged), yet Mr. Henry was publicly humiliated and treated far more harshly than Mr. Wallace and various other senior Fox News personnel, all of whom had supervisory relationships with their respective paramours. Many of these supervisors showed favoritism at work toward their subordinate lovers, yet, in almost every instance, Ms. Scott went to great lengths to cover up these incidents.

*Beast*, Ms. Scott essentially serves as a false front, a female CEO who, by virtue of her gender alone, uses that attribute to make it appear as if Fox News is serious about sexual harassment when it is not.

28.     As the story alleges, Ms. Scott enabled and covered up sexual abuses committed by former Fox News' CEO Roger Ailes while she served as one of his top lieutenants, while the pattern of cover-ups, and her willful participation in doing so, continued after her promotion to Fox News CEO.

29.     In fact, Fox News' cover-ups of favored personnel continued even after Plaintiff's termination. The termination and defaming of Plaintiff is, strangely enough, an extension of that pattern.

30.     In order to burnish her image as "the woman who cleaned up Fox News," Ms. Scott preemptively fired Plaintiff and ultimately defamed him as a sex criminal, hoping to divert attention away from her long and ongoing history of covering up actual instances of sexual misconduct.

31.     By publishing the Statement, Fox News and Ms. Scott knowingly created the false impression that Plaintiff had done something far more sinister than Mr. Wallace, Mr. Ailes, Bill O'Reilly, and a host of former Fox News employees and executives who were quietly terminated or allowed to resign.

32.     Ms. Scott knew that Plaintiff would imminently — and falsely — be accused of sexual assault, and she threw gasoline on the fire by publicly and falsely implicating him in "willful sexual misconduct."

33.     Other media organizations, Mr. Henry's colleagues at Fox News, as well as the general public concluded that Mr. Henry must have done something

particularly heinous, i.e., rape, for Ms. Scott and Fox News to render such harsh treatment against him.

34.    Ms. Scott and Fox News knew, or should have known, that Ms. Eckhart would immediately file suit and make public accusations of rape against Mr. Henry, and they further knew that her July 1, 2020 Statement would create the false impression that an "outside law firm" had confirmed her false accusations of rape.

35.    Sure enough, outside observers subsequently construed the circumstances surrounding Mr. Henry's termination, including the above-referenced Statement, as proof of his alleged rape.

36.    For example, the following tweet from Craig Havighurst, a writer and talk show host based in Nashville, Tennessee embodies the conclusions drawn by third-parties attributable Statement:



B.    Relevant Background

37.     Mr. Henry worked for Fox News in various on-air roles from the summer of 2011 until July 1, 2020, a few days after Ms. Eckhart falsely accused him of sexual assault.

38.     He and Ms. Eckhart had a consensual relationship that began in 2014 and ended in early 2017.

39.     During that time and for more than three years thereafter, Ms. Eckhart never suggested to anyone that Plaintiff harassed or assaulted her, even when she was expressly asked about whether she had ever suffered any sexual assault or harassment while at Fox News.

40.     According to court documents filed by Fox News in the matter styled as *Jennifer Eckhart v. Fox News, LLC, et al.*, United States District Court, Southern District of New York, Case No. 20-cv-05593, Ms. Eckhardt was asked pointblank during an exit interview with Fox News on June 12, 2020 — the day that she was fired for poor performance — about whether she had ever been sexually harassed or assaulted during her tenure at Fox News.

41.     According to Fox News, Ms. Eckhardt did not report any sort of sexual misconduct whatsoever when asked.

42.     Ms. Eckhardt has not mustered any corroborating evidence to support her allegation of rape; instead, all of the evidence shows that her allegations are false and that her relationship with Plaintiff was consensual.

43.     Before terminating and publicly humiliating Plaintiff, Fox News and Ms. Scott were already aware of internal evidence proving that Ms. Eckhart's allegations were fabricated.

44.     The investigation referenced in the July 1, 2020 Statement was a sham, and it lasted less than a week.

45.     Even so, Plaintiff provided the investigators with texts, emails, and photographs proving that Ms. Eckhardt was making false claims, and Defendants were aware of that evidence before they decided to publicly impugn Plaintiff.

46.     Furthermore, Defendants already knew that Ms. Eckhardt had been fired for poor performance, and that Ms. Eckhardt had never reported any sexual misconduct even when she was asked about it during her exit interview.

47.     On June 25, 2020, Ms. Eckhardt's attorneys threatened to file the bogus rape allegations against Plaintiff and Fox News unless they agreed to pay a multi-million-dollar settlement.

48.     Per their standard *modus operandi*, one of Ms. Eckhart's attorneys summoned the attorneys for Plaintiff and Fox News to his office, where he allowed them to read a draft complaint that included the false allegations of rape.

49.     Fox News had previously retained the New York law firm of David & Gilbert, LLP to investigate Ms. Eckhart's allegations and, as indicated above, Plaintiff cooperated fully with that investigation, providing the firm with all of his text messages and emails, among other documents.

50.     Whereas Ms. Eckhart's draft complaint alleged that she never had any romantic or sexual interest in Plaintiff, the texts and emails that she sent to Plaintiff told a very different story: Ms. Eckhart was a willing participant in the flirting, "sexting," and sending sexually-suggestive photographs of herself either nude or in lingerie.

51.     The documents provided by Plaintiff clearly demonstrated that Ms. Eckhart's claims in draft lawsuit were false.

52.     Ms. Eckhart alleged in her lawsuit, for example, that she never had any romantic interest in Plaintiff and that he sexually harassed her by sending her lewd messages such as "I'd like to wipe you with my tongue."

53.     Ever so conveniently, however, Ms. Ekhart omitted her own response to Plaintiff's message: "I bet you would, dirty boy. Come n get it ;)."[3]

54.     Defendants had further reason to know that Ms. Eckhart's allegations were false. According to court documents filed by Fox News in *Jennifer Eckhart v. Fox News, LLC, et al.*, Ms. Eckhart's supervisors met with her in February of 2020 to inform her that she was being placed on probationary status because of poor performance.

55.     In response, Ms. Eckhart complained that her co-workers were being mean to her, but she never said anything about sexual harassment, much less rape.

56.     She was ultimately terminated on June 12, 2020 and, as noted above, she was asked pointblank during her exit interview whether she had ever been sexually harassed or assaulted while working at Fox News.

57.     Ms. Eckhart did not, however, report any sexual harassment or misconduct by Mr. Henry (or anyone else) during that interview.

58.     When Defendants released the July 1, 2020 Statement about Plaintiff,

---

[3]     Mr. Henry objected to this half-truth early in the litigation with Ms. Eckhart, but Ms. Eckhart and her lawyers have included this half-truth in all three subsequent versions of her complaint. In other words, Ms. Ekhart and her lawyers have been deliberately deceptive by omitting her response the text message.

11

they knew that it would be interpreted as confirmation of Ms. Eckhart's false allegations against Mr. Henry, and indeed it was.

59.   When Ms. Eckhart filed suit on July 20, 2020, Ms. Scott and Fox News did nothing to remedy that false impression. Instead, a Fox News spokesperson, acting with Defendants' approval, released a public statement that only strengthened the false impression that Plaintiff had committed a heinous crime:

> Fox News, in a statement, said that it had retained an outside law firm to investigate Ms. Areu's claims and determined them to be "false, patently frivolous and utterly devoid of any merit." Fox News issued the statement on behalf of the network as well as Mr. Carlson, Mr. Hannity and Mr. Kurtz, who were also named as defendants in the suit.

> The network did not challenge Ms. Eckhart's allegations against Mr. Henry, noting: "Fox News already took swift action as soon as it learned of Ms. Eckhart's claims on June 25 and Mr. Henry is no longer employed by the network."

60.   The same statement also included the following sentence: "Ms. Areu and Jennifer Eckhart can pursue their claims against Ed Henry directly with him, as FOX News already took swift action as soon as it learned of Ms. Eckhart's claims on June 25 and Mr. Henry is no longer employed by the network."

61.   Accordingly, Defendants lent credence to claims that they already knew were false.

62.   More than four months later, Fox News issued another statement that took a swipe at Mr. Henry:

> Upon first learning of the allegations, we promptly commenced an independent investigation and took immediate action, firing Mr. Henry within six days of the notification on July 1, 2020 . . .

> FOX News takes all claims of harassment, misconduct and retaliation extremely seriously and maintains a zero tolerance policy that is strictly enforced throughout the company which is why Mr. Henry was fired

within days of Ms. Eckhart's complaint."

63.     As set forth herein, Plaintiff was not fired because he sexually harassed — much less raped — Jennifer Eckhart.  Defendants were already aware that Ms. Eckhart's claims were false. Instead, Plaintiff was fired in order to divert attention from Ms. Scott's long history of covering up actual misconduct, e.g., the sexual misconduct of Mr. Wallace and other senior executives.

64.     Ms. Scott's motivations for scapegoating Plaintiff were clear: At the time Ms. Eckhart made her false allegations against Plaintiff, Ms. Scott was hoping to be promoted to another position within the media empire of Rupert Murdoch and family, the owners of Fox News. According to a March 2, 2021 article in the *Australian Financial Review*, Lachlan Murdoch is the heir apparent to his father Rupert, and he had "grown weary of the relentless controversies surrounding Fox News."

65.      In fact, the Murdochs' exasperation with the controversies at Fox News had been well-known within the company for years. In early- to mid-June of 2020, shortly before Ms. Eckhardt's allegations, Fox News Vice President Lauren Petterson told Plaintiff that Ms. Scott wanted a new position elsewhere in the Murdoch empire because she was tired of the pressure at Fox News. Ms. Petterson said Ms. Scott was willing to do anything to keep the Murdochs happy, and for that reason she was trying to distance herself from the many controversies surrounding Fox News.

66.     Ms. Petterson confided this to Plaintiff because Fox News' producers – acting at Ms. Scott's direction – were suddenly and sharply downplaying any stories about athletes kneeling for the national anthem, even though Fox News had previously covered these stories relentlessly.

67.     Plaintiff learned about this new policy because he was scheduled to interview former collegiate and professional football coach Lou Holtz, but he was banned from asking Mr. Holtz about the anthem controversy. (Mr. Holtz was a vocal supporter of President Trump who shared the former President's disdain for players who kneel during the national anthem, and the subject had previously generated great interest among Fox News' viewers).

68.     According to Ms. Petterson, Ms. Scott told her lieutenants that she was "done" with the national anthem controversy because she was tired of "carrying water" for Mr. Trump.

69.     Ms. Petterson also said Fox News' change of attitude regarding the "anthem issue" had nothing to do with newsworthiness, much less principle, but everything to do with money.

70.     Ms. Petterson noted the Murdoch family was in negotiations with National Football League Commissioner Roger Goodell about renewing a multi-billion-dollar contract to broadcast NFL football games, and they did not want to appear too pro-Trump or otherwise jeopardize the renewal of the NFL contract, so Defendants strongly discouraged hosts like Plaintiff from reporting about the politicization of sports. [4]

---

[4]     The duplicity of Ms. Scott and Fox News is not limited to matters of sexual misconduct. As control of the company shifts from the aging Rupert Murdoch to his more liberal children, the company has increasingly tried to walk both sides of the left-right political divide. The Murdoch children want to appease their left-leaning social circles, but they also want to keep raking in tens of millions of dollars from Fox News' right-of-center leaning audience. Thus, their love-hate relationship with former President Trump and the network's conservative viewers. Ms. Scott wanted to appease the Murdoch heirs and keep her job, thus the motivation for her duplicity toward Plaintiff.

71.     Fox News' unabashed focus on money, at the expense of legitimate news stories, is nothing new for the company.

72.     In a case currently pending in State of Delaware, Canadian-based voting machine company, Dominion Voting Systems Corp., alleges that because Fox News was losing viewers after the 2020 election, it tried to "lure viewers back— including President Trump himself—by intentionally and falsely blaming Dominion for President Trump's loss by rigging the election."

73.     In other words, Dominion Voting Systems Corp. accuses Fox News of manufacturing news for profit.

74.     Plaintiff takes no position as to that particular allegation, but he can attest to the fact that Fox News quells news stories that threaten the personal, political, and financial interests of the Murdoch family or Fox Corporation's corporate leadership.

75.     As recently as June 15, 2021, an employee with Fox 26 Houston, Ivory Hecker, alleged that the company-owned affiliate was censoring stories about COVID treatments in order to protect relationships with advertisers.

76.     Ms. Scott, meanwhile, knew that Ms. Eckhart's bogus lawsuit would generate new controversy for Fox News and thus jeopardize her career by damaging her standing with the Murdochs.

77.     Consequently, Ms. Scott decided to "get ahead of the story" by publicly throwing Plaintiff under the bus. She knowingly transformed Plaintiff's consensual affair with a non-subordinate (that had ended more than three years prior) into something far more sinister, doing so in an effort to distance herself from the latest

15

controversy, protect her job, and salvage her image as the tough female executive who cleaned up sexual misconduct at Fox News.

78.     Mr. Wallace is but one example of Defendants' complacency. He began an extramarital affair with a subordinate employee (hereinafter "Female Subordinate #1") during the 2016 election cycle, while he was a Vice President of Fox News.

79.     The matter was investigated by the company's Human Resources Department in 2017, and during that time former Fox News reporter and current *Daily Beast* reporter Diana Falzone overheard a conversation in a Fox News' bathroom wherein Female Subordinate #1 coordinated with Mr. Wallace about how to conceal their relationship from Fox News' Human Resources investigation.[5]

80.     Critically, Ms. Scott was aware of the incident and helped conceal it.

81.     In 2017, Female Subordinate #1 was given a plum assignment elsewhere in the company. The affair was widely known within Fox News, but after Ms. Scott became CEO in 2019, Mr. Wallace was promoted to president of Fox News

---

[5]     Ms. Falzone settled her own gender discrimination lawsuit against Fox News in 2018, *see* Oliver Darcy, "Fox News settles gender discrimination suit with female reporter, her lawyer says," March 8, 2018 CNN, https://money.cnn.com/2018/03/08/media/fox-news-settlement-diana-falzone/index.html, and she regularly writes negative stories about Fox News, often multiple times per week. She has been particularly critical of Mr. Henry. *See, e.g.,* "Ed Henry's Accusers Say His Behavior Was an Open Secret at Fox News," August 31, 2021 *Daily Beast*, https://www.thedailybeast.com/ed-henrys-accusers-say-his-behavior-was-an-open-secret-at-fox-news. Despite her personal knowledge of Mr. Wallace's affair with a subordinate, however, Ms. Falzone has never written a single word about it. It is a virtual certainty that Ms. Falzone signed a non-disclosure agreement when she settled with Fox News, thus it appears that she is less concerned about journalism and more concerned about protecting her settlement proceeds. In fact, Mr. Henry is informed that Fox News was willing to pay her a large sum of money, despite the questionable merits of her case, in order to keep her from disclosing Mr. Wallace's affair. Mr. Henry intends to bypass any nondisclosure agreements by serving a subpoena on Ms. Falzone and forcing her to testify (along with Gretchen Carlson and other current and former Fox News employees).

despite the company's (and Ms. Scott's) full knowledge of his "willful sexual misconduct" in the workplace.

82.    Plaintiff is aware of numerous other instances of sexual misconduct that have not yet been made public because Defendants have successfully covered them up.

### C.    Defendants Have Engaged in a Pattern of Duplicity

83.    One example of Fox News' duplicity is the company's "blacklist," which prevents hosts like Tucker Carlson or Sean Hannity from inviting guests who have criticized or otherwise offended the Murdoch family or Fox News' senior management.

84.    In 2020, the company began blacklisting prominent conservatives who offended friends of the Murdoch family.

85.    For example, prominent attorneys Joe DiGenova and Victoria Toensing regularly appeared as Fox News guests for many years, but that all changed when they dared to criticize leftist billionaire George Soros, a friend of the Murdoch family. Both are now blacklisted by Fox News, and insiders expect James O'Keefe, the CEO of Project Veritas, to be blacklisted because of his role in reporting Ms. Hecker's allegations against the Fox News-owned Houston affiliate.

86.    As Plaintiff has learned the hard way, people are expendable so far as the Defendants are concerned, and so is the truth. It should come as no surprise, therefore, that the Murdochs, Ms. Scott and other top executives at Fox News frequently scheme against each other.

87.    Defendants knew, or should have known, that Plaintiff had done

nothing comparable to what Mr. Wallace and a host of other employees had either done or been accused of doing, and they knew that Ms. Eckhart was lying about Plaintiff.

88.     As to Ms. Scott, she further thought that swift action, regardless of its truth, would improve her standing with the Murdoch family and divert attention away from her own misconduct.

89.     In a February 15, 2021 column, *Washington Post* media critic Erik Wimple noted that Ms. Scott's contract with Fox News was renewed by the Murdochs on February 9, 2021, less than a month after *The Daily Beast* reported that her career at the network "may shortly be coming to an end."

90.     While Plaintiff understands Ms. Scott's desire to protect and advance her career in the Murdoch empire, it is no excuse for scapegoating him and destroying his career in order to advance her own.

## COUNT I
## DEFAMATION PER SE

91.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

92.     Plaintiff is public figure who, by virtue of his regular appearances on Fox News, a nationally televised cable network, has achieved pervasive notoriety or fame.

93.     Defendants published the Statement on July 1, 2020 and published additional statements referring to their July 1, 2020 Statement thereafter as set forth above.

94.     The Statements contains false assertions of fact that Plaintiff committed the serious crime of rape or serious sexual misconduct, including the false statements set forth above.

95.     Defendants made the statements with malice, with knowledge that the statements were false or with reckless disregard as to their truth or falsity, and for the purpose of defaming Plaintiff. To wit, Defendants knew that the Statement was false when they published it because Defendants knew or should have known of the true state of affairs relating to Plaintiff.

96.     In the alternative, Defendants acted negligently in their publication of the Statement.

97.     Defendants acted without any privilege or authorization when they published the Statement.

98.     The Statement constitutes defamation *per se* because the Statement: (i) falsely charges Plaintiff with committing illegal acts constituting a serious crime, or serious sexual misconduct; (ii) contains allegations that would tend to injure Plaintiff in his trade, business, profession or office; (iii) contain allegations by implication from the language employed such that the reader would understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter, and (iv) by natural consequence would cause Plaintiff damages.

99.     Defendants published the Statement willfully and maliciously with the intent to harm Plaintiff.

100.    As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer loss of economic opportunities, scorn, derision, harassment, emotional

distress, anxiety as well as loss of reputation in an amount to be proven at trial.

## COUNT II
## DEFAMATION

101.   Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

102.   Defendants published the Statement and subsequent statements as alleged herein.

103.   The Statement and resulting statements contains false assertions of fact, including the false statements set forth above.

104.   As a consequence of the Statement, and Plaintiff's onetime role with Fox News, he has also suffered actual and special damages as further set forth below.

105.   Defendants' acted with actual malice consisting of the intent to harm Plaintiff professionally by virtue of, among other things, publishing the Statement which falsely criminalizes and sensationalizes Plaintiff's consensual sexual relations.

106.   Alternatively, Defendants' Statement and their resulting statements were made with the knowledge that the statements were false or with reckless disregard as to their truth or falsity, and for the purpose of defaming Plaintiff. To wit, Defendants knew that the Statement was false when they published it because Defendants knew or should have known of the true state of affairs relating to Plaintiff.

107.   Defendants acted without any privilege or authorization when they published the Statement.

108.   In the alternative, Defendants acted negligently in their publication of the Statements.

109.    The defamatory acts described herein have caused actual and special damage to Plaintiff, and continue to do so, in that Plaintiff has suffered and continues to suffer loss of economic opportunities, including, but limited to, a loss of revenues previously enjoyed from providing professional services as well as loss of reputation in an amount to be proven at trial.

110.    In addition to the foregoing, Plaintiff has suffered, and will continue to suffer, mental pain and anguish, emotional distress, harassment, anxiety, embarrassment and humiliation in an amount to be proven at trial.

**COUNT III**
**INVASION OF PRIVACY/FALSE LIGHT**

111.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

112.    Defendants intentionally invaded and intruded upon Plaintiff's privacy, solitude and seclusion by publishing the Statement and resulting statements that contain material false statements of fact.

113.    Defendants placed Plaintiff in a false light by publishing the Statement and resulting statements, despite having no basis to do so.

114.    Defendants knew or acted in reckless disregard of the falsity or the truth or falsity of the publicized matter and false light it would place upon Plaintiff.

115.    Defendants conduct in publishing the Statement and resulting statements was offensive and outrageous, and would be viewed as highly offensive to a reasonable person.

116.    As a result of Defendants' actions, Plaintiff has been damaged, causing him to suffer loss of economic opportunities, including, but limited to, a loss of

revenues previously enjoyed from providing professional services as well as loss of reputation in an amount to be proven at trial.

117.    In addition to the foregoing, Plaintiff has suffered, and will continue to suffer, mental pain and anguish, emotional distress, harassment, anxiety, embarrassment and humiliation in an amount to be proven at trial.

**COUNT IV**
**PERMANENT INJUNCTIVE RELIEF**

118.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

119.    Defendants' Statements remain accessible on the Internet as of the date of filing this Complaint.

120.    Defendants' conduct has caused and unless enjoined will continue to cause substantial and irreparable injury to Plaintiff and his reputation.

121.    By reason of the foregoing, Plaintiff has suffered, and will continue to suffer, harm that cannot be addressed by monetary damages alone.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants and award the following relief to Plaintiff:

A.    A permanent injunction requiring the removal of the Statement;

B.    Presumed, actual, special and/or compensatory damages in an amount to be proven at trial;

C.    Punitive damages;

D.    The costs, disbursements and expenses of this action;

E.    Reasonable Attorneys' fees;

F.      Pre- and post-judgment interest on the sum of any presumed, actual, special or compensatory damages; and

G.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Edward Henry, demands trial by jury in this action of all issues so triable.

Respectfully submitted,

Brian M. Block
Joel G. MacMull (*Pending Admission Pro Hac Vice*)
**MANDELBAUM SALSBURG, P.C.**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-295-3652
jmacmull@lawfirm.ms
bblock@lawfirm.ms

Ty Clevenger (*Pending Admission Pro Hac Vice*)
P.O. Box 20753
Brooklyn, New York 11202-0753
Tel: 979-985-5289
tyclevenger@yahoo.com

*Attorneys for Plaintiff Edward Henry*

June 30, 2021