**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

EDWARD HENRY,

      *Plaintiff,*

v.

FOX NEWS NETWORK, LLC and
SUZANNE SCOTT, Individually,

      *Defendants.*

Civil Action No.

21-cv-07299-RA

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Joel G. MacMull
Brian M. Block (*Admitted Pro Hac Vice*)
**MANDELBAUM BARRETT, P.C.**
570 Lexington Avenue, 21st Floor
New York, New York 07068
Tel. (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Plaintiff Edward Henry*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ................................................................................................................. 4

   I.     LEGAL STANDARD. ...................................................................................... 4

   II.    NEW JERSEY CHOICE OF LAW PRINCIPLES APPLY. ............................ 5

   III.   PLAINTIFF'S DEFAMATION CLAIMS ARE WELL-PLED AND ACTIONABLE. .. 7

      A.   The Defendants Made False Statements of Fact About Mr. Henry. ............................ 8

      B.   The Statements are Demonstrably False, Not Opinion. ............................................... 10

      C.   The Amended Complaint Sufficiently Alleges Actual Malice. .................................. 14

   IV.   DEFENDANTS' STATEMENTS ARE NOT PRIVILEGED UNDER NEW YORK CIVIL RIGHTS LAW § 74. ........................................................................ 17

      A.   The Challenged Statements are Not Fair Reports as Required by § 74. ..................... 17

      B.   The Challenged Statements are not True as Required by § 74. .................................. 21

   V.    PLAINTIFF'S CLAIM FOR INVASION OF PRIVACY/FALSE LIGHT UNDER MARYLAND LAW IS MERITORIOUS. ..................................................... 22

   VI.   PLAINTIFF SUFFICIENTLY PLEADS HIS TORTIOUS INTERFERENCE WITH CONTRACT/PROSPECTIVE ECONOMIC ADVANTAGE CLAIM. ........................ 23

   VII.  THE APPROPRIATE REMEDY FOR A TECHNICAL PLEADING DEFICIENCY HERE IS NOT DISMISSAL BUT LEAVE TO FILE AN AMENDED COMPLAINT. 25

CONCLUSION ............................................................................................................. 26

4884-4134-3754, v. 1

# TABLE OF AUTHORITIES

## *Cases*

*600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130 (1993) ...................................................... 8

*Armstrong v. Simon & Schuster*, 85 N.Y.2d 373 (1995) ........................................................ 9, 10

*Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214 (D. Or. 2016), *aff'd*, 925 F.3d 1133 (9th Cir. 2019) .......................................................................................................................... 13

*Beary v. W. Publ'g. Co.*, 763 F.2d 66 (2d Cir. 1985) ......................................................... 17, 18

*Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 649 (S.D.N.Y. 2015), *aff'd sub nom. Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016) ............................................................ 19

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ................................................................ 14, 15

*Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194 (S.D.N.Y. 2018) ........................... 16

*Brian v. Richardson*, 87 N.Y.2d 46 (1995) ............................................................... 8, 9, 11, 12

*Brimelow v. New York Times Co.*, 21-cv-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ........... 15

*Brittany McHenry v. Fox News Network, LLC*, No. 19-cv-11294 (S.D.N.Y.) ............................. 24

*CBS Broadcasting, Inc. v. Counterr Grp.*, 2008 WL 11350274 (S.D.N.Y. Aug. 26, 2008) ........ 19

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) ........................................ 14

*Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371 (S.D.N.Y. 2018) ......................................... 21

*Davis v. Boehm*, 24 N.Y.2d 262 (2014) ....................................................................................... 9

*DeIuliis v. Engel*, No. 20-cv-3252, 2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ..................... 6

*Dimond v. Time Warner, Inc.*, 989 N.Y.S.2d 727 (4th Dept. 2014) ........................................... 19

*Diversant, LLC v. Artech Info. Sys., LLC*, No. 18-cv-12133, 2018 WL 6584138 (D.N.J. Dec. 14, 2018) .................................................................................................................. 6

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113 (2d Cir. 2013) ...................................................... 15

*Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ........................................................................................................................ 16

*Erdman v. Victor*, No. 20-cv162, 2021 WL 5359660 (S.D.N.Y. Nov. 17, 2021) ........................ 8

*Fairfax Financial Hldgs. Ltd v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44 (N.J. Super. Ct. App. Div. 2017) ..................................................................................................................... 5, 6

4884-4134-3754, v. 1

*Fairstein v. Netflix, Inc.*, No. 20-cv-8042, 2021 WL 3501527 (S.D.N.Y. Aug. 9, 2021) ........... 10

*Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 (N.D.N.Y. 2014) ........................................................ 22

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................................... 26

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ............................................................ 6

*Gem Holdco, LLC v. Changing World Technologies, L.P.*, 2014 WL 4249134 (N.Y. Sup. Ct., N.Y. Cty. Aug. 28, 2014) ............................................................................................ 19

*Gibson v. Penn. State Police*, 175 F. Supp. 3d 528 (W.D. Pa. 2016), *aff'd*, 676 F. App'x 130 (3d Cir. 2017) .................................................................................................................... 13

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146 (N.Y. 1993) ................................................................. 9

*Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693 (D. Md. 2021) ............................. 6, 23

*Hertz Corp. v. City of New York*, 1 F.3d 121 (2d Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994). 5

*Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235 (1991) ............................................................. 8

*In re Cohen*, 98 B.R. 179 (Bankr. S.D.N.Y. 1989) .................................................................... 26

*Jacobus v. Trump*, 55 Misc. 3d 470 (N.Y. Sup. Ct., N.Y. Cty. 2017), *aff'd*,  64 N.Y.S.3d 889 (1st Dept.  2017) ........................................................................................................... 10, 11

*James v. DeGrandis*, 138 F. Supp. 2d 402 (W.D.N.Y. 2001) .............................................. 13, 22

*Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392 (S.D.N.Y. 2013) ................... 8

*Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107 (2d Cir. 2005) ...................................................... 17

*Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021) ...................................................... 18

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ....................................................... 23

*Koppel v. 4987 Corp.*, 167 F.3d 125 (2d Cir. 1999) .................................................................... 5

*Maniscalco v. Brother Intern. Corp. (USA),* 793 F. Supp. 2d 696 (D.N.J. 2011) ......................... 5

*Mirage Entertainment, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26 (S.D.N.Y. 2018) ....................................................................................................................................... 11

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) ................................................ 26

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-cv-9193, 2021 WL 4173929 (S.D.N.Y. Sept. 14, 2021) .............................................................................. 26

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................................... 16

*Oakley v. Dolan*, 980 F.3d 279 (2d Cir. 2020) ......................................................................... 25

*Palin v. New York Times*, 940 F.3d 804 (2d Cir. 2019) ............................................................ 7, 15

*Partridge v. State*, 100 N.Y.S.3d 730 (3d Dept.  2019) ................................................................ 9

*Powell v. Subaru of Am., Inc*., 502 F. Supp. 3d 856 (D.N.J. 2020) .............................................. 7

*Sheldon v. PHH Corp*., 135 F.3d 848 (2d Cir. 1998) ................................................................... 5

*Shutterstock Penske Media Corp. v. Shutterstock, Inc.*, No. 20-cv-04583, 2021 WL 2894809
        (S.D.N.Y. July 9, 2021) ...................................................................................................... 21

*Software For Moving, Inc. v. Frid*, 09-cv-4341, 2010 WL 2143670 (S.D.N.Y. May 27, 2010).... 4

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986) ........................................................................... 8

*Tahir Erk v. Glenn L. Martin Co*., 116 F.2d 865 (4th Cir. 1941) ................................................. 26

*Trahan v. Lazar*, 457 F. Supp. 3d 323 (S.D.N.Y. 2020).................................................... 23, 24, 25

*Zappin v. Daily News, L.P*., No. 16-cv-8762, 2017 WL 3425765 (S.D.N.Y. Aug. 9, 2017) ....... 17

### Statutes

28 U.S.C. § 1404(a) ...................................................................................................................... 5

N.Y. Civ. Rights Law § 70-a ......................................................................................................... 7

N.Y. Civ. Rights Law § 74 ................................................................................................... 17, 18, 20, 22

N.Y. Civ. Rights Law § 76-a .................................................................................................... 7, 14

N.Y. Penal Law § 130.20 .............................................................................................................. 13

### Federal Rules of Civil Procedure

Fed. R. Civ. P. 12(b)(6)......................................................................................................... passim

Fed. R. Civ. P. 15(a) .................................................................................................................... 25

Fed. R. Civ. P. 8 ........................................................................................................................... 25

### Secondary Sources

Restatement (Second) of Conflict of Laws.................................................................................... 5

Restatement (Second) of Torts § 571, cmt. g (1977) .................................................................... 8

### Other Sources

Brian Flood, "Fox News terminates Ed Henry after outside probe into sexual misconduct claim,"
        Fox News (July 1, 2020), https://www. foxnews.com/media/fox-news-terminates-ed-henry-
        after-outside-probe-into-sexual-misconduct-claim .................................................................. 6

Opinion, *Oxford English Dictionary*, https://www.lexico.com/en/definition/opinion (last visited
   Jan. 18, 2022) .................................................................................................................... 10

Plaintiff Edward Henry ("Plaintiff" or "Mr. Henry") respectfully submits this memorandum of law in opposition to the motion by Fox News Network LLC ("Fox") and Suzanne Scott ("Ms. Scott") to dismiss the Amended Complaint.[1] (Fox and Ms. Scott are collectively referred to herein as the "Defendants.")

## INTRODUCTION

Defendants seek dismissal on the grounds that their defamatory statements are not defamatory at all, or, if they are, the challenged statements constitute "opinion" and not fact. Failing that, they say, the statements fall under New York's statutory privilege for "fair and true" descriptions of judicial proceedings. They further conclude that Plaintiff's claims for false light and tortious interference with contract fail as a matter of law. But not one of these "defenses" is applicable to the facts and allegations as pled, and certainly not at this stage of the litigation. Indeed, with their over-the-top rhetoric such as "Plaintiff's Complaint comes nowhere close to satisfying even ordinary pleading requirements," (Defs. Br.[2] at 8), it is a wonder what Defendants are reading. It is certainly not allegations contained in the Amended Complaint. And, of course, Defendants *ad hominem* attack on Plaintiff and his counsel does not alter the facts as alleged.

The claims here involve the archetypal defamation situation. The most important factual question in most defamation actions is whether the Defendants' statements were true, because truth, of course, is always a defense to a claim of defamation. Here too, the core issue is the truth of statements published by Defendants, as well as the actual malice with which these statements were made because Defendants had knowledge of their falsity when they were published. As the

---

[1]       All citations to the Amended Complaint file on December 14, 2021 (ECF 67) appear herein as "Am. Compl. ¶ ___."

[2]       All references to Defendants' Memorandum to Dismiss the Amended Complaint dated December 28, 2021 (ECF 69) appear herein as "Defs. Br. at ___."

1

allegations of the Amended Complaint make clear, there is no genuine dispute that Defendants described Mr. Henry's conduct in a false, misleading and defamatory manner; that they involved purported statements of fact, not opinion, by Defendants concerning the truth of Plaintiff's conduct; and that Defendants' motion for dismissal is meritless.

This motion, in fact, is part of an overarching campaign by Defendants to keep a lid on certain facts that are not only embarrassing, but scandalous. These facts — an intentional and coordinated campaign by high-level Fox officials to cover-up the rampant frat house-like behavior of a bygone era — have been the subject of several public exposes in recent years. And so, public relations, at least for Defendants, compels them to "double down" and continue to besmirch Mr. Henry and his counsel in their motion.

These statements, directed at Mr. Henry, a professional  journalist, are actionable, non-privileged, assertions purporting to be fact upon which this lawsuit is based. To hold the challenged statements are not actionable or privileged would require a finding that the Defendants' statements are true, or that they are mere "opinion," a characterization not supportable by either common sense or case law. Accordingly, the Court should deny Defendant's motion to dismiss the Amended Complaint.

## FACTUAL BACKGROUND

Mr. Henry previously served in various broadcasting roles with Fox. (Am. Compl. ¶¶1, 8-9.) Between 2014 and 2017, he had a consensual affair with a female associate producer, Jennifer Eckhart, *id.* ¶28, who worked in an entirely different division of the company, Fox Business. (*Id.* ¶¶15, 17, 20 and 48-59.) On June 12, 2020, Fox terminated Ms. Eckhart for poor performance. (*Id.* ¶¶30, 44.) In her exit interview that day, Fox asked her whether she had ever been sexually harassed or assaulted during her tenure. (*Id.* ¶¶30, 46.) In response, she did not report any sexual misconduct whatsoever by Mr. Henry or anyone else. (*Id.* ¶¶31, 47.)

2

After she was terminated, Ms. Eckhart attempted to extort money from Mr. Henry and Fox by falsely alleging that she had been raped by Mr. Henry. (*Id.* ¶¶37-38, 50.) Specifically, Ms. Eckhart threatened to go public with her allegations (by means of a federal lawsuit) unless Mr. Henry and Fox paid her millions of dollars in advance. (*Id.*) In response to that threat, Fox hired an outside law firm to conduct what it claimed was an "independent investigation." (*Id.* ¶14.) In reality, however, the six-day investigation was a sham with a pre-ordained outcome. (*Id.* ¶¶16, 137-38.) Nonetheless, Mr. Henry fully cooperated, providing clear and irrefutable evidence including texts, emails, and photographs demonstrating that Ms. Eckhart was lying about her allegations of rape. (*Id.* ¶¶16-17, 39-59.) In fact, Fox knew that Ms. Eckhart was lying about key facts even before the investigation began. (*Id.*)

At the time, Ms. Scott had grown tired of serving as the CEO of Fox and was hoping to be transferred to a different role in the larger Fox conglomerate of companies, which were owned by the Murdoch family. (*Id.* ¶¶57-66.)  Both before and after Ms. Scott's promotion to CEO, Fox had been plagued by revelations of severe sexual harassment and even sexual assault by prominent male executives and broadcasters at the company. (*Id.*) The sexual scandals generated ongoing negative publicity for Fox, and the Murdoch family had grown exasperated with the relentless negatively publicity. (*Id.* ¶¶58-59.) Ms. Scott knew that Ms. Eckhart's allegations could derail her career as CEO and prevent her from being transferred elsewhere within the Murdoch media empire, so she decided to get ahead of the story. (*Id.* ¶¶65-66.)

On July 1, 2020, Ms. Scott and Fox President Jay Wallace released a statement announcing that Mr. Henry had been accused of "willful sexual misconduct" and that after an outside investigation, Mr. Henry had been fired by the company. (*Id.* at ¶14.) Given Fox's sordid history of covering up sexual misconduct, i.e., by paying "hush money" to victims and even witnesses,

(*see id*. ¶84; ECF 67-1 ¶¶20, 22, 37, 39, 41, 51-52 (incorporated by reference in the Am. Compl. ¶¶106, 139 and attached as Exhibit 1)), Fox employees and the general public reasonably concluded that Mr. Henry must have done something particularly egregious, i.e., something far more serious than a consensual affair. (*See* Am. Compl. ¶¶23-26.) At the time she released the public statement about Mr. Henry, Ms. Scott knew that the outside investigation was a sham and that Ms. Eckhart's accusations were lies. (*See id.* ¶¶15-18, 30-31, 46-47.) Furthermore, Ms. Scott knew that Ms. Eckhart would soon accuse Mr. Henry of rape and also knew that her statement would be construed as proof that Mr. Henry had been fired for raping Ms. Eckhart. (*Id.* ¶¶10, 49-50.) Indeed, that is exactly what happened. (*See, e.g.*, *id.* ¶26.) Ms. Scott falsely impugned Mr. Henry as a rapist in order to save her own career. (*Id.* ¶¶57-66, 185.)

After Mr. Henry was terminated, and even after Ms. Eckhart filed her lawsuit, the Defendants continue to portray Mr. Henry as having engaged in the particularly heinous crime of rape. (*Id.* ¶¶14, 52, 55, 71.) In fact, the Defendants smeared Mr. Henry once more on the very day that he filed his original complaint in this case. (*Id.* ¶71.)

## ARGUMENT

### I.   <u>LEGAL STANDARD.</u>

The standard governing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well-settled. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule does not require detailed factual allegations . . . A trial court considering a Rule 12(b)(6) motion accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Software For Moving, Inc. v. Frid*, 09-cv-4341, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) (internal quotations and citations omitted). On a Rule 12(b)(6) motion, the Court's consideration "is limited to facts stated on the face of the complaint and in documents appended

4

to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994). In sum, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh — much less anticipate — the evidence that might be offered in its support or to defeat the claim. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

## II.   NEW JERSEY CHOICE OF LAW PRINCIPLES APPLY.

Defendants neglect to engage in a proper choice of law analysis or the wrong one altogether. (Defs. Br. at 20.) This case was transferred from the United States District Court, District of New Jersey by consent under 28 U.S.C. § 1404(a). (ECF 22 at 2; Am. Compl. ¶5). The Court must, therefore, apply New Jersey's choice of law rules. *See Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998) (explaining "when a case has been transferred pursuant to 28 U.S.C. § 1404(a) . . . a court will apply the law of the transferor forum, including that forum's choice of law rules."). Applying New Jersey's choice of law rules points to the application of Maryland law, New York law, or both as it relates to Plaintiff's different claims, the latter known as the doctrine of dépeçage.

"New Jersey has adopted the 'most significant relationship' test of the Restatement (Second) of Conflict of Laws." *Maniscalco v. Brother Intern. Corp. (USA),* 793 F. Supp. 2d 696, 704 (D.N.J. 2011); *see also Fairfax Financial Hldgs. Ltd v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 64 (N.J. Super. Ct. App. Div. 2017) (stating same for tort claims). In assessing which law to apply, the first step is to determine if a conflict exists by examining the substance of the potentially applicable laws and, if a conflict does exist, then determining which jurisdiction has the most significant relationship to the claim. *Id.* For this second step, the court weighs the factors in the Restatement section corresponding to the cause of action. *Id.* at 705. In this way, New

5

Jersey's choice of law rules incorporate the doctrine of dépeçage, which recognizes that "the laws of different states may apply in the same case to different issues in the case." *Diversant, LLC v. Artech Info. Sys., LLC*, No. 18-cv-12133, 2018 WL 6584138, at *4 (D.N.J. Dec. 14, 2018).

Restatement § 150 governing multistate[3] defamation and §§ 152-153 governing false light/invasion of privacy are relevant (Counts I-III). Plaintiff concedes his tortious interference claims (Count IV) is governed by New York law. While Plaintiff contends that Maryland law applies to his defamation claims based on the Restatement factors, there does not appear to be an apparent conflict between Maryland and New York defamation law. *Compare Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 713, 721-22 (D. Md. 2021), *with Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020). However, there exists a conflict as to Plaintiff's false light claim because Maryland recognizes the claim while New York does not. *See Harvey*, 520 F. Supp. 3d at 724-25 *with DeIuliis v. Engel*, No. 20-cv-3252, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021). Based on the test in the Restatement §§ 150(2) and 153 for multistate defamation and invasion of privacy, i.e. the state of the plaintiff's domicile at the time of publication, Plaintiff contends that Maryland law applies to his defamation and false light claims because at the time Defendants published the defamatory statements, Mr. Henry was a Maryland resident. (Am. Compl. ¶¶1, 178.) *See Fairfax Financial Hldgs.*, 160 A.3d at 75-78 (applying Restatement § 150 principles). Indeed, Mr. Henry also spent the vast majority of his journalism career in the Washington, D.C. area including Maryland.

---

[3]     Defendants' July 1, 2020 statement was transmitted to all Fox News employees around the Country, *see* Am. Compl. ¶14, and also later broadcast to the general public. *See* Brian Flood, "Fox News terminates Ed Henry after outside probe into sexual misconduct claim," Fox News (July 1, 2020), https://www.foxnews.com/media/fox-news-terminates-ed-henry-after-outside-probe-into-sexual-misconduct-claim. The other statements in the Am. Compl. were similarly published. (Am. Compl. ¶¶52, 55, 69-71.)

Nevertheless, it may be difficult if not impossible for the Court to conduct a proper choice of law analysis at this nascent stage of the proceedings. *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020). Accordingly, to the extent the Court does not believe it can make this determination now, on the record presently before it, Plaintiff respectfully requests the Court defer its assessment of Plaintiff's false light claim until discovery is complete.

With the above in mind, Plaintiff proceeds below to analyze his defamation/defamation by implication claims under New York law (given this Court's familiarity with the body of case law and the seeming lack of conflict), his false light claim under Maryland law, and his tortious interference claim under New York law.

## III.   PLAINTIFF'S DEFAMATION CLAIMS ARE WELL-PLED AND ACTIONABLE.

Defendants begin their attack with a red herring, namely, by attempting to appropriate the legal standard applicable for an anti-SLAPP claim pursuant to N.Y. Civ. Rights Law §§ 70-a and 76-a, rather than, as called for here, the legal standard to be applied to a defamation claim on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Defs. Br. at 8-10.)

To plead a claim for defamation under New York law, a plaintiff must allege "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability." *Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019).

Here, Plaintiff has alleged, among other things, defamation *per se* and defamation *per quod* against the Defendants based on their publication of claims that Mr. Henry committed "willful sexual misconduct." (Am. Compl. ¶¶14, 52, 55, 71,[4] 154-162, 153-171.) Thus, Mr. Henry alleges

---

[4]   The four statements set forth in paragraphs 14, 52, 55, and 71 of the Amended Complaint are collectively referred to as "the Challenged Statements."

that the Challenged Statements are: (1) defamatory (*id.* ¶¶10, 14, 52, 55, 71, 149, 158); (2) false (*id.* ¶¶11, 15, 24, 32, 44, 50, 52, 72, 74, 151, 156, 166.); (3) directly concern Mr. Henry (*id.* ¶¶14, 52, 55, 71); (4) were published to a third-party with actual malice (*id.* ¶¶14, 16-18, 30-31, 46-48, 55-57, 59, 65-66, 71, 158, 167, 185); and (5) give rise to *per se* actionability or special damages. (*Id.* ¶¶157, 158, 169.) Imputing a serious crime to a plaintiff constitutes defamation *per se. See Erdman v. Victor*, No. 20-cv162, 2021 WL 5359660, at *3 (S.D.N.Y. Nov. 17, 2021) (citations omitted); *see also* Restatement (Second) of Torts § 571, cmt. g (1977) (listing serious crimes that constitute defamation *per se* involving moral turpitude, including rape). So too is a "statement that tends to injure another in his or her trade, business, or profession" actionable *per se. Kalimantano GmbH v. Motion in Time, Inc*., 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013). Plaintiff is a professional journalist who would obviously tend to be injured, and has been, in his trade, business or profession by virtue of accusations he committed a serious sex crime of "willful sexual misconduct."

### A.    The Defendants Made False Statements of Fact About Mr. Henry.

In determining whether a statement is actionable under New York law, the dispositive inquiry asks whether a reasonable reader could have concluded that the statement was conveying facts about the plaintiff. *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1993). "Since falsity is a *sine qua non* of a libel claim and since only assertions of fact are capable of being proven false . . . it follows that only statements alleging facts can properly be the subject of a defamation action." *Von Gutfeld*, 80 N.Y.2d at 139 (citing *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)); *accord Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235, 254 (1991). Whether a statement constitutes a cognizable claim is an inquiry which must be made by the court, *Von Gutfeld*, 80 N.Y.2d at 139; *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986), and "entails an examination of the challenged statements with a view toward (1) whether the specific

language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian*, 86 N.Y. at 351 (cleaned up); *Steinhilber*, 68 N.Y.2d at 292.

In applying the *Brian* factors, courts have adopted a "holistic approach." *Davis v. Boheim*, 24 N.Y.2d 262, 270 (2014). "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Brian*, 86 N.Y. at 351 (internal citations and quotation marks omitted); *see also Gross v. N.Y. Times Co*., 82 N.Y.2d 146, 152 (N.Y. 1993) ("The dispositive inquiry … is whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff.") (citation and internal quotation marks omitted). Further, where the facts supporting the opinion are fully set forth, the characterization accompanying those facts is a nonactionable opinion. *Gross*, 82 N.Y.2d at 153. Simply stated, "[c]ontext is key."[5] *Jacobus v. Trump*, 55 Misc. 3d 470, 475-76 (N.Y. Sup. Ct.,

---

[5]      This is all the more true where, as here, a plaintiff is asserting a claim for defamation by implication:

> [D]efamation by implication does not require that a direct statement is, in and of itself, false; rather, it is premised on "false suggestions, impressions and implications arising from otherwise truthful statements" (*Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380-381 (1995); *accord Stepanov v. Dow Jones & Co., Inc*., 987 N.Y.S.2d 37 (1ˢᵗ Dept. 2014)). Indeed, defamation by implication can include statements whose falsity is based not on what was said, but rather "by omitting or strategically juxtaposing key facts" (*Martin v. Hearst Corp*., 777 F.3d 546, 552 (2d Cir. 2015)).

*Partridge v. State*, 100 N.Y.S.3d 730, 734 (3d Dept.  2019). Significantly, context is not limited to the four corners of a publication. Falsity can be determined by facts that are extraneous to the publication:

N.Y. Cty. 2017), *aff'd*, 64 N.Y.S.3d 889 (1st Dept. 2017). An opinion is "a view or judgment formed about something, **not necessarily based on fact or knowledge**." Opinion, *Oxford English Dictionary*, https://www.lexico.com/en/definition/opinion (last visited Jan. 18, 2022) (emphasis added). Thus, where facts are known on a particular matter, such as the veracity of Ms. Eckhart's allegations of rape (Am. Compl. ¶¶ 17-18, 30-31, 46-48), a party privy to the actual facts therefore cannot opine about them. Indeed, knowingly stating something contrary to the truth is not an opinion — it is a demonstrably false statement.

### B.    The Statements are Demonstrably False, Not Opinion.

In attempt to avoid liability, Defendants argue that their statements about Mr. Henry were merely expressions of opinion. (Defs. Br. at 14-16.) Specifically, they argue that the term "sexual misconduct" is too vague to be factual, therefore their statements about Mr. Henry's purported "willful sexual misconduct" must not be factual. (*Id.* at 15-16.)  Before proceeding further, it is important that we return to the heart of any defamation inquiry: context. As explained above, a statement that is not defamatory on its face may be actionable if the surrounding context suggests a defamatory meaning. Accordingly, the phrase "willful sexual misconduct" can be defamatory if, in context, it refers to "false suggestions, impressions, and implications" which, in this case, is the Plaintiff's alleged sexual assault of Ms. Eckhart. *Armstrong*, 85 N.Y.2d at 380-81.

---

New York recognizes a defamation claim when a statement is not defamatory on its face and instead alleges "an innuendo" that attaches "a defamatory meaning" to language referencing a plaintiff. *See, e.g.*, *Cole Fischer Rogow, Inc. v. Carl Ally, Inc*., 288 N.Y.S.2d 556 (1968). In a claim of defamation per quod, "no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication." *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247 (1st Dept. 2009).

*Fairstein v. Netflix, Inc*., No. 20-cv-8042, 2021 WL 3501527, at *7 (S.D.N.Y. Aug. 9, 2021); (Am. Compl. ¶¶24, 52, 56, 74, 151.)

In support of their argument that "willful sexual misconduct" is too vague to give rise to a cognizable claim, Defendants cite to several authorities, mischaracterizing each of them. (Defs. Br. at 15-16.) None of them stand for the proposition that an allegation of "willful sexual misconduct" is a statement of opinion. Defendants' characterization of *Mirage Entertainment, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37 (S.D.N.Y. 2018), is deceptive. *Mirage* says nothing whatsoever about "sexual misconduct" or anything like it.

"Expressions of opinion … are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation," *Jacobus*, 55 Misc. 3d at 475-76; however, "assertions of fact" are not protected. *Id.* The Challenged Statements are not non-actionable opinions, or opinions at all. They are demonstrably false statements of purported fact. The following criteria determine whether a statement is actionable or protected as opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Brian,* 87 N.Y.2d at 51. Regarding the first *Brian* factor, the specific language of the Challenged Statements has a "precise meaning [and is] readily understood" as alleging that Mr. Henry committed "willful sexual misconduct" – meaning that he at least committed a non-consensual sexually-related touching, if not outright assault or rape. Certainly, the July 1, 2020 statement, as well as the three additional statements that followed weeks and months later, are neither imprecise nor readily misunderstood, much less factually obscure. (Am. Compl. ¶¶14, 52, 55, 71.)

The second *Brian* factor requires the Court to consider whether the statements are capable of being proven true or false. In this case, the falsity of the Challenged Statements are, or at least will be, proved by reference to facts that demonstrate the consensual nature of Mr. Henry and Ms.

Eckhart's prior sexual relationship. (Am. Compl. ¶¶28, 29, 31, 32, 66, 158, 185.) The consensual nature of their relationship, which Mr. Henry alleges Defendants were aware of **before** they published the first of their Challenged Statements is a fact, not opinion. But even if the consensual nature of their relationship fails to bear out in discovery, that determination would certainly not be one for the Court to make on a Rule 12(b)(6) motion and would in any case go to truth or falsity, not fact versus opinion.

The final *Brian* factor asks the Court to consider "whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian,* 87 N.Y.2d at 51. Here, Defendants assert the Challenged Statements were made in response to a complaint **received** about Mr. Henry, as opposed to allegations they themselves were making. (Defs' Br. at 11.)  This, they say, "remains indisputably true." (*Id.*)

This assertion is baseless. The Challenged Statements describe Mr. Henry's actions as "involving willful sexual misconduct" and goes on to add that Fox "strictly prohibits all forms of sexual harassment, misconduct and discrimination." (Am. Compl. ¶14.) The implication of the statement is crystal clear and the reader is left with one indelible impression: Mr. Henry had committed sexual assault or, at minimum, non-consensual sexual contact. The Defendants' resulting statements are no less factually ambiguous. "Ms. Areu and Jennifer Eckhart can pursue their claims against Ed Henry directly with him, as Fox News already took swift action as soon as it learned of Ms. Eckhart's claims . . . ." (*Id.* ¶53; *see also id. ¶¶* 55, 71.) It is untenable to argue that stating the exact opposite of the known truth is mere opinion. Knowledge of facts regarding a particular matter necessarily precludes one's ability to opine on that matter. Any statement contrary to the known facts is not an opinion; it is a demonstrably false statement.

Rather than the inapposite cases that Defendants cite, the decision in *James v. DeGrandis*, 138 F. Supp. 2d 402 (W.D.N.Y. 2001), is instructive. There, the court denied summary judgment holding that the defendant's statement that the plaintiff, a soccer coach, had a "history of sexual misconduct" was defamatory. *Id.* at 415-16 (citations omitted). In so finding, the court also necessarily rejected the notion that such an accusation of sexual misconduct could be considered mere opinion. *See id.* at 416. And, if allegations of "sexual misconduct" were defamatory in 2001, the Defendants charge of "willful sexual misconduct" has only grown more defamatory in the wake of #MeToo era that followed. *See, e.g.*, *Doe v. Manhattan Beach Unified Sch. Dist.*, 19-cv-06962, 2020 WL 11271843, at *3 (C.D. Cal. July 23, 2020) ("The Court also narrows the requests to allegations or investigations of sexual misconduct only, which the Court defines as sexual assault (including rape), sexual harassment, or sexual discrimination."); *Gibson v. Penn. State Police*, 175 F. Supp. 3d 528, 537 n.4 (W.D. Pa. 2016) (providing definition of "sexual misconduct"), *aff'd*, 676 F. App'x 130 (3d Cir. 2017); *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1224 n.7 (D. Or. 2016) (same), *aff'd*, 925 F.3d 1133 (9th Cir. 2019). In fact, New York has a criminal offense entitled "sexual misconduct," which it defines as nonconsensual sexual intercourse, oral, or anal sexual conduct. N.Y. Penal Law § 130.20. The above makes clear that claims that a person perpetrated sexual misconduct is a statement of fact amenable to disproof. It is certainly not an opinion as a matter of law.

Finally, it is worth emphasizing again that Ms. Eckhart's Complaint, which the Defendants claim the Challenged Statements are based on (Defs. Br. at 11), were known by the Defendants to be false **before** they were published. (Am. Compl. ¶¶17-18, 30-31, 46-47, 39-48.) By characterizing Ms. Eckhart's allegations as "willful sexual misconduct" for which Mr. Henry was fired from Fox, as the Challenged Statements do, the Defendants chose a turn of phrase that

unambiguously and unmistakably portray Plaintiff as having committed a sex crime. The accusation is a lie, and it is defamatory, because it can be shown to be a lie with evidence that his relationship with Ms. Eckhart was consensual, and the Defendants knew it was consensual, long before they decided to treat Mr. Henry as a sacrificial lamb.

### C.   The Amended Complaint Sufficiently Alleges Actual Malice.

The Defendants' arguments about "actual malice" once again begin with reference to the wrong standard. The Defendants cite N.Y. Civ. Rights Law §76-a(2) for the contention that Mr. Henry must establish actual malice "by clear and convincing evidence." (Defs. Br. at 18.) At the pleadings stage, however, evidence is not even a consideration. The Second Circuit is clear that the only issue for purposes of the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is whether Mr. Henry has **plausibly alleged** actual malice. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015). "[A] public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough facts to rise a reasonable expectation that discovery will reveal evidence of actual malice." *Id.* "Although actual malice is subjective, a court typically will infer actual malice from objective facts." *Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 183 (2d Cir. 2000). This is because courts understand "that a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." *Biro*, 807 F.3d at 545. "[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of each case." *Id.* Courts in the Second Circuit "have inferred actual malice at the pleading stage from allegations that referred to the nature and circumstances of the alleged defamation or previous dealings with the defendant." *Id.* at 545-46 (collecting cases). Plaintiff has carried his burden in spades here.

Mr. Henry is not, as the Defendants contend, trying to conflate Ms. Scott's personal ill-will with "actual malice." A statement is made with actual malice where it is "made with knowledge

14

that it was false or with reckless disregard of whether it was false or not." *Palin*., 940 F.3d at 809.

A public figure must show that "there is sufficient evidence to permit the conclusion that the

defendant in fact entertained serious doubts as to the truth of his publication." *Brimelow v. New

York Times C*o., 21-cv-66, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021); *see also id.* at *3

(stating malice shown where "the publisher actually entertained serious doubts about the veracity

of the publication, or that there are obvious reasons to doubt the veracity of the informant or the

accuracy of his reports"). At a minimum, Mr. Henry has alleged the Defendants had "obvious

reasons to doubt the veracity" of Ms. Eckhart's rape allegations by virtue of what they learned

before they published the July 1, 2020 statement and those that followed. (Am. Compl. ¶¶16-18,

29-32, 40-49.). More precisely, Defendants knew that in her June 12, 2020 exit interview just

weeks prior, Ms. Eckhardt responded that she had never been the subject of sexual misconduct

when asked pointblank if she had been. (*Id.* ¶¶29-31, 46-48.) During the so-called "investigation,"

Mr. Henry provided Defendants with all of his texts, emails, photographs, and other documents

demonstrating his consensual relationship with Ms. Eckhardt. (*Id.* ¶¶15-18, 39-43.) Additionally,

the Amended Complaint goes to extraordinary lengths to plead allegations to support Ms. Scott's

personal motivation and incentive to publish the Challenged Statements in an effort to save her

own career, lending further credence to Plaintiff's allegations in this regard. (*See* Am. Compl.

¶¶11-13, 65-66, 150-152.) The foregoing allegations certainly present "plausible grounds" to infer

Defendants — and Ms. Scott in particular — published the Challenged Statements with actual

malice. *See Biro*, 807 F.3d at 546; *see also Dongguk Univ. v. Yale Univ*., 734 F.3d 113, 123 (2d

Cir. 2013) (explaining "the plaintiff must identify the individual responsible for publication of a

statement, and it is that individual the plaintiff must prove acted with actual malice").

To avoid this inescapable conclusion, Defendants attempt to refute the Amended Complaint in this case by quoting this Court's statements about the complaint in the *Eckhart* case. (Defs. Br. at 19 (quoting *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021)).) But this Court's statements in the *Eckhart* case is of no moment, as the opinion merely states the obvious: the Court was required to take Ms. Eckhart's pleadings as true in that case because she was the plaintiff. *See Eckhart*, 2021 WL 4124616, at *7 (discussing standards for motion to dismiss). Likewise, the Court is required in **this** case to take Mr. Henry's pleadings as true at this stage because he is the plaintiff in **this** case. *Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 208-09 (S.D.N.Y. 2018). Accordingly, the Defendants cannot refute Mr. Henry's allegations in this case by quoting the Court's statements about other pleadings in other cases — a bar that is reinforced by Defendants' failure to cite to any authority in support of such a methodology.

In a similar attempt to twist the pleadings in their favor, Defendants suggest that actual malice is negated because they conducted a "neutral, independent investigation" of Ms. Eckhart's allegations. (Defs. Br. at 19.) But even assuming *arguendo* that has some bearing on Mr. Henry's pleading of actual malice, Mr. Henry further alleges the investigation was a sham, ignoring the plain evidence in order to produce a pre-ordained result. (Am. Compl. ¶¶16-18, 29-32, 40-49, 137.) The Defendants cite *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 287-88 (1964) for the proposition that a defendant may negate allegations of actual malice by a demonstrating a "neutral, independent investigation." (Defs. Br. at 19.) But not only does *Sullivan* not say anything of the sort, even if it did, it would not lend itself to dismissal of Plaintiff's pleadings at this stage. Mr. Henry has the right to discover the nature of that investigation and confirm that it was indeed a pretext for a pre-ordained conclusion, just as he alleges.

16

## IV.   DEFENDANTS' STATEMENTS ARE NOT PRIVILEGED UNDER NEW YORK CIVIL RIGHTS LAW § 74.

Defendants assert that the Challenged Statements are privileged pursuant to New York

Civil Rights Law § 74 ("§ 74"), (Defs. Br. at 16-17), which states in pertinent part:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of **a fair and true report of any judicial proceeding**, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

*Id.* (emphasis added). As shown below, however, Defendants cannot establish as a matter of law

that the Challenged Statements are both **fair *and* true** – or, indeed, **either** fair or true. Both are

required to dismiss a claim for defamation under § 74. Nor, more fundamentally, could the July 1,

2020 statement ever qualify for protection under this privilege.[6]

### A.   The Challenged Statements are Not Fair Reports as Required by § 74.

The New York legislature enacted § 74 to "encourage publication and dissemination of

judicial decisions and proceedings." *Beary v. W. Publ'g. Co.*, 763 F.2d 66, 68 (2d Cir. 1985).

Under § 74, a publication that constitutes a "fair and true report of any judicial proceeding" is

privileged and immune from civil action ( the "§ 74 privilege"). *Id.* A publication is "fair and true

if it is substantially accurate." *Zappin v. Daily News, L.P.*, No. 16-cv-8762, 2017 WL 3425765, at

*7 (S.D.N.Y. Aug. 9, 2017) (citing *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir.

2005)). A "substantially accurate" publication is one that, "despite minor inaccuracies, does not

produce a different effect on a reader than would a report containing the precise truth." *Karedes*,

423 F.3d at 119. The Second Circuit recently wrote:

> A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether the ordinary viewer or reader can determine from the

---

[6]     For the present purposes, there does not appear to be any conflict between New York and Maryland with regard to each state's fair report privilege. *See Olukoya v. Sowore*, No. 18-cv-2922, 2019 WL 3501567, at *3-4 (D. Md. Aug. 1, 2019) (explaining Maryland and New York fair report privileges are not in general conflict). Because the outcome is the same, Plaintiff analyzes the defense under New York law.

publication itself that the publication is reporting on a judicial proceeding. In other words, if the context in which the statement is made makes it impossible for the ordinary viewer or reader to determine whether the publication was reporting on a judicial proceeding, the absolute privilege does not apply.

*Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021).

As an initial threshold matter, Defendants' July 1, 2020 statement is not a report on a judicial proceeding at all, but rather an internal email from Fox to its employees stating its decision to terminate Mr. Henry based on its purported investigation that confirmed Ms. Eckhart's complaint of willful sexual misconduct. (Am. Compl. ¶14.) There was no existing lawsuit or other judicial proceeding at the time the statement was published. Ms. Eckhart first filed her lawsuit accusing Mr. Henry of rape nearly three weeks later on July 20, 2020. (*Id.* ¶52.) Thus, the July 1, 2020 statement could never satisfy the "key test" to qualify for the privilege; no reader of the statement could ever conclude from its face that it was reporting on a judicial proceeding — because it was not. *Kinsey*, 991 F.3d at 178. To apply § 74 to this statement would completely untether it from the purpose of the privilege. *Beary*, 763 F.2d at 68. In this vein, it bears emphasizing that none of the Challenged Statements are "reports" at all; rather, they are the statements of Defendants in their capacity as an employer (and later a party). It just so happens to be here that Fox is also a cable news channel.

Moreover, authorities interpreting the breath of the § 74 privilege do not extend to commentary on draft pleadings, let alone mere anticipated litigation. In arguing otherwise, Defendants once again cite to a raft of cases that are distinguishable, distorting them beyond recognition. (Defs. Br. at 16-17.) *Dimond v. Time Warner, Inc.*, does not extend § 74 to include anticipated litigation, but merely notes that a CNN report "provided background facts for [a transgender] woman's claims in pending and anticipated judicial proceedings, and the broadcast as a whole was a 'substantially accurate' report of the judicial proceedings." 989 N.Y.S.2d 727

(4th Dept. 2014).  And in *Gem Holdco, LLC v. Changing World Technologies, L.P.*, the court merely held that the defendant's press release, which was issued long **after** the lawsuit was filed, did "not make any actual untrue statements of fact," a conclusion that bears no parallels to Mr. Henry's allegations.  2014 WL 4249134, at *1-2, *6 (N.Y. Sup. Ct., N.Y. Cty. Aug. 28, 2014). The case has nothing to do with "reporting about the positions the parties intend to take in litigation before the lawsuit is filed," contrary to Defendants' assertion. (Defs. Br. at 16.) Lastly, Defendants' reliance on *CBS Broadcasting, Inc. v. Counterr Grp.* for the proposition that the July 1, 2020 statement was privileged because it was "connected to a judicial proceeding" is meritless. 2008 WL 11350274, at *13 (S.D.N.Y. Aug. 26, 2008). Critically, the proceedings at issue in *CBS* "pertained to a pending judicial proceeding that commenced with [an] arrest." *Id.* at 14. By contrast, here, there was no proceeding underway at the time Defendants published the first of their Challenged Statements.[7] (Am. Compl. ¶¶14, 52.) In fact, in teeing up its analysis, this Court in *CBS* wrote:

> If the context in which the statements are made make it impossible for the ordinary viewer to determine whether defendant was reporting on a trial or simply from interviews and independent research, the absolute statutory privilege does not attach.

2008 WL 11350274, at *13. Indeed, none of the Challenged Statements facially appear to report on a judicial proceeding. (*See* Am. Compl. ¶¶14, 55, 71.)

Defendants premise their § 74 argument on the assertion that the Challenged Statements did nothing more than reiterate the gist of Ms. Eckhart's charges that were to be filed against Mr.

---

[7]     Dicta in *Bertuglia v. City of New York* suggests that a statement made about an anticipated legal proceeding would not be privileged. 133 F. Supp. 3d 608, 649 (S.D.N.Y. 2015), *aff'd sub nom. Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016) ("The plaintiffs dispute whether the statement was finalized before or after the arraignment, but in any case, the statement was not published until after the arraignment and the statement tracked what ADA Ruzow said during the arraignment and reported on the content of the indictment. Therefore, the publication of the press release is privileged and not actionable.").

19

Henry in her own case. (Defs. Br. at 5). But this theory, even if true, does not support dismissal. Defendants' initial statement described Mr. Henry's actions as "involving willful sexual misconduct." (Am. Compl. ¶¶ 10, 14, 71). What Defendants effectively refer to as a mere "reiteration" is, in fact, not fair or even literally true, much less in context.

Under facts such as these, and given Defendants' admission that they conveyed what they characterize with self-serving generosity as "statements related to, or relied upon, . . . anticipated . . . judicial proceedings" (Defs. Br. at 17), § 74 does not provide Defendants with the cover they seek to misstate and mislead readers about Mr. Henry's conduct. What Defendants refuse to reckon with is the plain fact that, to a reasonable reader, the Challenged Statements connote the impression that Mr. Henry committed willful sexual misconduct, an implication that is false and defamatory.

Another point bears repeating. In order for the privilege to apply, the statement must "fairly and accurately" describe the judicial proceeding. With that in mind, consider the Defendants' November 9, 2020 statement. By the time that statement was released, Ms. Scott had already created the false impression that Mr. Henry had been fired because Fox's internal investigation confirmed that he raped Ms. Eckhart. (Am. Compl. ¶¶23-24, 52-54.) The November 9, 2020 statement only further fueled that false impression given it was published after Ms. Eckhart filed her lawsuit leveling her false allegations of rape. Yet, when one considers the actual record in *Eckhart* or in this case, the Defendants have **never** contended that Mr. Henry raped Ms. Eckhart.[8] In other words, because the November 9, 2020 statement did not "fairly and accurately" describe the position that Fox News had taken by that time in the *Eckhart* matter, it therefore cannot be

---

[8]     Since the presiding judge of this case is also presiding over the *Eckhart* matter, and since Mr. Henry would rather not try to prove a negative, he will simply ask the Court to take judicial notice of the *Eckhart* docket. If the Defendants can identify any instance in *Eckhart* or in this case where they took the position that Mr. Henry raped Ms. Eckhart, then they should make that known.

privileged in any appreciable sense of the word. That is all the more true with respect to the gratuitous July 1, 2021 press release. (Am. Compl. ¶71.) Fox has never taken the position in this litigation (or any other) that Mr. Henry engaged in "countless extramarital affairs," nor would any such allegation be relevant to this case. An "ordinary reader" would not conclude from the context that the "countless extramarital affairs" accusation was anything other than a needless smear of Mr. Henry.[9]

In a very real sense, the Defendants' memorandum is self-defeating. The Defendants argue at length that because Mr. Henry had an extramarital affair and exchanged sexually explicit text messages with his paramour, Ms. Eckhart, that alone was sufficient proof of "willful sexual misconduct" to negate the element of falsity. (Defs. Br. at 11-12.)  But that argument ends up proving too much with respect to the fair report privilege.  If the Defendants had said from the outset that Mr. Henry was terminated because he had an extramarital affair, sent sexually charged text messages, or otherwise violated the morals clause in his contract, Mr. Henry never would have filed this lawsuit. But Defendants did not do that.  Instead, they falsely impugned him of having committed a serious sex crime, namely raping Ms. Eckhart. For this reason too, Defendants are not entitled to § 74 privilege because the Challenged Statements do not constitute "fair comment."

## B.    The Challenged Statements are not True as Required by § 74.

It is not enough that a statement regarding a judicial proceeding be fair to qualify for the statutory privilege of § 74. The statement must also be true. *Fine v. ESPN, Inc.*, 11 F. Supp. 3d.

---

[9]     The Defendants' July 1, 2021 statement that Mr. Henry had "driv[en] his personal life into the ground with countless extramarital affairs" is a separate statement that is both false and defamatory. (Am. Compl. ¶¶ 69-72.) Mr. Henry plainly flagged this statement in his Amended Complaint, however, the Defendants fail to seek dismissal associated with this statement. Defendants have therefore waived any objection. *See Shutterstock Penske Media Corp. v. Shutterstock, Inc.*, 20-cv-04583, 2021 WL 2894809, at *7 (S.D.N.Y. July 9, 2021); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived").

209, 220 (N.D.N.Y. 2014). Defendants nonetheless omit the § 74 "truth requirement" from their argument, relying entirely on the phrase "fair reports of judicial proceedings" to avail itself of the § 74 privilege. (Defs. Br. at 16-17.) Characterizing someone's behavior as "willful sexual misconduct" when, in fact, it was a consensual affair is a misstatement of fact. *James* recognized that an accusation that someone engaged in "sexual misconduct" has a specific meaning to the typical reasonable reader such that it states a claim for defamation. 138 F. Supp. 2d at 415-16. Here too, the initial Challenged Statement claiming Plaintiff was involved in "willful sexual misconduct in the workplace" (Am. Compl. ¶14), followed by "[u]pon learning of the allegations, we … took immediate action, firing Mr. Henry within six days of notification [of the allegations]" (*id.* ¶ 55), which was again reiterated several months later when it was coupled with a separate defamatory allegation involving Plaintiff's alleged promiscuity (*id.* ¶¶ 71, 72), are all false because they not only imply but literally assert facts contrary to the truth. As such, they do not constitute "fair and true reports of judicial proceedings" and are not privileged pursuant to § 74. Defendants use of this morally and legally loaded term, with its guarantee of harm to a professional journalist cannot, as a matter of law, be found to constitute a "true" report on a Rule 12(b)(6) motion.

## V. PLAINTIFF'S CLAIM FOR INVASION OF PRIVACY/FALSE LIGHT UNDER MARYLAND LAW IS MERITORIOUS.

A claim for false light/invasion of privacy under Maryland law is analogous to a claim for defamation by implication under New York law.

> Under Maryland law, to succeed on a claim for false light, the plaintiff must show that (1) the defendant "g[ave] publicity to a matter concerning [the plaintiff] that place[d] the [plaintiff] before the public in a false light," (2) the false light would be highly offensive to a reasonable person," and (3) the defendant knew or recklessly disregarded "the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999) (internal citations omitted). Additionally, "[a] false light claim 'may not stand unless the claim also meets the standards for defamation.'" *Ross v. Cecil Cty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 624 (D. Md. 2012) (citing *Crowley v. Fox Broad. Co.*, 851 F. Supp. 700, 704 (D. Md. 1994)).

22

*Harvey*, 520 F. Supp. 3d at 724–25. For the reasons set forth in support of his claim for defamation by implication, Plaintiff also states a claim for false light/invasion of privacy under Maryland law.

## VI.  PLAINTIFF SUFFICIENTLY PLEADS HIS TORTIOUS INTERFERENCE WITH CONTRACT/PROSPECTIVE ECONOMIC ADVANTAGE CLAIM.

Under New York law, the elements of a tortious interference with contract claim are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal citations and quotations omitted.) By comparison, tortious interference with prospective economic advantage requires a party to establish: "(1) that [he] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Id.* at 400. Both claims are sufficiently pled in the Amended Complaint, but Defendants do not even address this latter claim.[10]

In his Amended Complaint, Plaintiff cites to *Trahan v. Lazar*, 457 F. Supp. 3d 323, 359 (S.D.N.Y. 2020), for the express purpose of explaining the basis of his tortious interference with contract claim against Ms. Scott. (Am. Compl. ¶183.) Incredibly, however, Defendants' memorandum ignores the case entirely and thus fails to distinguish it.

The question before the Court is whether an employee or supervisor like Ms. Scott can tortiously interfere with the contract of a co-employee or subordinate like Mr. Henry. In *Trahan*,

---

[10]    As noted above in the context of Mr. Henry's claim for defamation, Defendants have also waived any objection to Mr. Henry's claim for tortious interference with prospective economic relations, having failed to move against it in their opening memorandum. *See supra*, n.9.

this Court affirmatively stated that one employee can, in fact, tortiously interfere with the contract of another:

> "[A] plaintiff bringing a tortious interference claim must show that the defendants were not parties to the contract." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (emphasis in original). "In order to show that a defendant-employee is a 'third party,' a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority." *Id*. "A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." *Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996).

*Trahan*, 457 F. Supp. 3d at 359.

Mr. Henry's tortious interference claim is based on the premise that Ms. Scott acted "purely from malice or self-interest" in an effort to save her own career at Fox or within the larger Murdoch media empire. (Am. Compl. ¶¶57-59, 65-66, 152, 185.) Lest the Defendants argue otherwise, Mr. Henry's allegations concerning the manner Defendants handled other similar incidents that were far more egregious than Mr. Henry's consensual affair with a non-subordinate leave little doubt. The Defendants went to significant lengths to cover up the sexual misconduct of Jay Wallace, Bill Sammon, Doug Rohrbeck, George "Tyrus" Murdoch, Doug McKelway, and Andrew Napolitano. (Am. Compl. ¶¶67-84, 85-102, 103-105, 106-110, 111-116, and 117-138.) Likewise, the Defendants covered up serious sexual misconduct by hosts Bill O'Reilly and Charles Payne. *See* First Amended Complaint ¶¶20, 22, 37, 39, 41, 51-52 in *Brittany McHenry v. Fox News Network, LLC*, No. 19-cv-11294 (S.D.N.Y.), incorporated by reference in Mr. Henry's Amended Complaint at ¶¶106 and 139 as Exhibit 1. Significantly, Mr. Rohrbeck and Mr. Murdoch were promoted by Ms. Scott after she interfered with Mr. Henry's contract. (Am. Compl. ¶¶103, 107.) And, after Mr. Wallace's sexual misconduct was publicly revealed in this case, Defendants bent over backwards to protect him. (*Id*. ¶ 69.)

24

Given that history of whitewashing serious sexual misconduct both before and after Mr. Henry was terminated, a factfinder could conclude, as Plaintiff alleges, that Ms. Scott singled out Mr. Henry and caused Fox to terminate his contract purely for her own reasons of "self-interest," i.e., the preservation of her employment at the expense of Mr. Henry's. *See Trahan*, 457 F. Supp. 3d at 359. Charles Payne was publicly accused of sexual assault, for example, but his contract was not terminated and eventually he was allowed to return to the airwaves as a program host. (*See* Exhibit 1 to the Am. Compl., ¶49.)  Defendants argue that because Mr. Henry was terminated by Ms. Scott, "there can be little doubt" she was "acting within the scope of her duties as CEO" at the time. (Defs. Br. at 23.) They are certainly free to make that argument. But it cannot carry they day here, on this motion, because it gives rise to a factual dispute that cannot be resolved on a motion to dismiss pursuant to Rule 12(b)(6). At the motion to dismiss stage, "a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes." *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020). Accepting Mr. Henry's pleadings as true, as the Court must here, Mr. Henry's termination was not inevitable. Thus, the Court should deny dismissal of this claim.

## VII.  THE APPROPRIATE REMEDY FOR A TECHNICAL PLEADING DEFICIENCY HERE IS NOT DISMISSAL BUT LEAVE TO FILE AN AMENDED COMPLAINT.

As set forth above, the Amended Complaint in this action not only meets the requisite pleading standards imposed by Fed. R. Civ. P. 8, but its allegations include a level of specificity well beyond what that Rule requires. Nevertheless, to the extent the Court deems any aspect of the pleading deficient, Mr. Henry should be permitted to further amend his pleadings. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."). The Second Circuit has shown a "strong liberality . . .  in allowing amendments under Rule 15(a)" in order to ensure that claims will be decided on the merits rather than on technicalities. *In re Cohen*, 98 B.R. 179, 181 (Bankr. S.D.N.Y. 1989) (citing *Tahir Erk v. Glenn L. Martin Co*., 116 F.2d 865, 871 (4th Cir.

1941)); *see also Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-cv-9193, 2021 WL 4173929, at *8 (S.D.N.Y. Sept. 14, 2021) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)). Unless there is a reason, such as undue delay, bad faith, or dilatory motive on the part of the movant, leave to amend should be "freely given," as the Rule requires. *Monterey Bay*, 2021 WL 4173929, at *8; *Foman v. Davis*, 371 U.S. 178, 182 (1962).  There is no indication of such countervailing considerations here.  Accordingly, should this Court identify any deficiency with Mr. Henry's Amended Complaint, an amendment rather than dismissal would be the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety and allow this case to proceed to discovery.

Respectfully submitted,

Joel G. MacMull
Brian M. Block (*Admitted Pro Hac Vice*)
MANDELBAUM BARRETT P.C.
570 Lexington Avenue, 21st Floor
New York, New York 07068
Tel. (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

January 18, 2022

26

4884-4134-3754, v. 1