GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

March 31, 2022

VIA ECF

Hon. Ronnie Abrams
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Henry v. Fox News Network, LLC*, Case No. 1:21-cv-07299

Dear Judge Abrams:

On behalf of Defendants Fox News Network, LLC and Suzanne Scott ("Defendants"), I respectfully write to bring to the Court's attention two recent decisions from the Second Circuit Court of Appeals pertinent to Defendants' motion to dismiss Plaintiff's amended complaint. Both decisions are appended hereto.

*First*, in *Valley Electronics AG v. Polis*, the Second Circuit affirmed the dismissal, under Federal Rule of Civil Procedure 12(b)(6), of defamation claims involving statements that the plaintiff companies were "unethical," "made . . . outrageous claims," and were not "interested in providing accurate information" to consumers. 2022 WL 893674, at *1 & n.1 (2d Cir. Mar. 28, 2022). The court "conclude[d] as a matter of law that [defendant's] statements are nonactionable opinions" under New York law, as they "carr[ied] no precise meaning as used." *Id.* at *2. As with the terms "ethical" or "unethical," the phrase "sexual misconduct" refers to conduct that is sufficiently "indefinite" and "ambiguous" as to constitute protected opinion. *Id.*; *see* Defs.' Mot. to Dismiss the Am. Compl., Dkt. 69, at 15 (arguing that the phrase "sexual misconduct" has "no fixed, precise meaning" and is therefore protected opinion).

*Second*, in *Lawrence v. Hearst Communications, Inc.*, the Second Circuit granted summary judgment to defendants in a defamation suit arising out of news articles using the words "harass" and "haunt" to describe the behavior of the plaintiff, who was arrested after following a woman to her car. 2022 WL 894716, at *1-*4 (2d Cir. Mar. 28, 2022). The court explained that defamation defendants are not liable for statements that are "substantially true"—that is, "when 'the main charge, or gist, of the libel is true'"—and that a characterization of a plaintiff's behavior "is substantially true if the characterization

GIBSON DUNN

March 31, 2022
Page 2

comports with the common understanding of the terms employed." *Id.* at *3.[1] *See* Defs.' Reply Br. in Supp. of their Mot. to Dismiss the Am. Compl., Dkt. 80, at 3–5 & n.4 (arguing that courts look to what the "average reader" would "reasonably" understand the words "sexual misconduct" to mean, not to a narrow, technical use of the phrase in New York state's penal code).

Respectfully,

*Avi Weitzman*

Avi Weitzman

Cc: All Counsel of Record via ECF

---

[1] *Lawrence* involved a defamation claim brought under Connecticut law, *see Lawrence*, 2022 WL 894716, at *1, but there is no material difference between New York and Connecticut defamation law on this point. *See, e.g.*, *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (under New York law, "[s]ubstantial truth turns on the understanding of the 'average reader'") (citation omitted).

Valley Electronics AG v. Polis, Not Reported in Fed. Rptr. (2022)
2022 WL 893674
Case 1:21-cv-07299-RA   Document 87   Filed 03/31/22   Page 3 of 8

2022 WL 893674
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

VALLEY ELECTRONICS AG, a Swiss corporation, Valley Electronics GmbH, a German corporation, Valley Electronics, LLC, a Pennsylvania limited liability company, Plaintiffs-Appellants,
v.
Chelsea B. POLIS, an individual, Defendant-Appellee.

21-2108-cv
|
March 28, 2022

Appeal from an order and judgment of the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 6, 2021 order and August 9, 2021 judgment of the District Court be and hereby are **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: Peter W. Ross (Charles Avrith, on the brief), Ross LLP, Los Angeles, CA.

FOR DEFENDANT-APPELLEE: Samuel Callahan (Dori Ann Hanswirth, Paul Q. Andrews, on the brief), Arnold & Porter Kaye Scholer LLP, Washington, DC, and New York, NY.

PRESENT: José A. Cabranes, Reena Raggi, Susan L. Carney, Circuit Judges.

**SUMMARY ORDER**

*1 Valley Electronics AG, Valley Electronics GmbH, and Valley Electronics, LLC (together, "Valley") sued Chelsea Polis for defamation. Valley alleges that Polis, a reproductive health epidemiologist, made defamatory statements regarding the marketing of Valley's product Daysy, which is designed to "identify the fertile and infertile phases of the menstrual cycle" using basal body temperature. Compl. ¶ 9. The allegedly defamatory statements appear on Polis's blog on her personal website, in a *BuzzFeed* article quoting her, and in comments she wrote in response to others' Instagram posts. The statements generally fall into two categories. In her "Science Statements," Polis allegedly misrepresented the soundness of the studies supporting Daysy's efficacy and disparaged Daysy's advertising in reliance on those studies.[1] In her "Ethics Statements," Polis allegedly inaccurately impugned Valley's integrity.[2] The District Court dismissed Valley's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that Polis's alleged statements were nonactionable opinion. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review the District Court's holdings on a motion to dismiss *de novo*, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). Under New York law, which undisputedly applies, the "dispositive inquiry" in distinguishing actionable assertions of fact from protected expressions of opinion is "whether a reasonable reader could have concluded that the publications were conveying

facts about [Valley]." *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (brackets and citation omitted). "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact," *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995), we consider the broader written and social contexts of the alleged statements, which are "often the key consideration[s] in categorizing a statement as fact or opinion," *Davis v. Boeheim*, 24 N.Y.3d 262, 272 (2014) (citation omitted). Beyond context, New York courts also consider "whether the specific language in issue has a precise meaning which is readily understood" and "whether the statements are capable of being proven true or false." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) (citation omitted).

**\*2** Context suggests that Polis's statements were opinions. Each publication in which Polis's statements appeared recited or referred to Polis's critique of a favorable-to-Daysy study and the publisher's subsequent retraction of that study, among additional critiques of Valley authored by Polis and others. Disclosing Polis's longstanding and ongoing role in criticizing Daysy "would induce the average reader ... to look upon the communication as an expression of opinion rather than a statement of fact." *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991).[3] Further, the article published on the blog section of Polis's personal website and Polis's Instagram comments used "medi[a] that [are] typically regarded by the public as ... vehicle[s] for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter." *Brian*, 87 N.Y.2d at 52 (citation and internal quotation marks omitted). Although Polis's website touts her scientific credentials and has a professional look, the writing on her blog is informal, and readers are put on alert that she is sharing her opinions by the statement at the top of the webpage that she "hopes to transmute her rage at social injustice and scientific denialism into something useful." App'x 22. And Polis's quotes in the *BuzzFeed* article were qualified; she stated that "[i]t does not appear" that Valley is interested in providing its consumers accurate information, and the view that Valley lacked solid evidence was cast as belonging to "Polis and other critics." App'x 50; *see also* Compl. ¶ 18. In light of these qualifications and the disclosure of Polis's prior advocacy, "it would be plain to the reasonable reader ... that [Polis] was voicing no more than a highly partisan point of view." *Immuno*, 77 N.Y.2d at 255.

In light of this context, we conclude as a matter of law that Polis's statements are nonactionable opinions. This conclusion is reinforced by the fact that the vast majority of Polis's statements carry no precise meaning as used. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("[T]he words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood *by the public to which they are addressed*." (emphasis in original) (citation omitted)); *Hollander v. Cayton*, 536 N.Y.S.2d 790, 791–92 (2d Dep't 1988) (deeming comments that plaintiff was "immoral" and "unethical" nonactionable opinion because they were "indefinite, ambiguous[,] and incapable of being objectively characterized as true or false"). In context, the Ethics Statements in particular "are hyperbole and therefore not actionable opinion." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).[4]

We have reviewed all of the arguments raised by Valley on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the August 6, 2021 order and August 9, 2021 judgment of the District Court.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 893674

Footnotes

1   *See* Compl. ¶¶ 18 (Daysy is marketed "without solid evidence"), 19 ("Daysy misrepresented their evidence-base"; Valley provides "[n]o reliable estimate" of Daysy's efficacy; and a retracted favorable study is "junk science"), 21 ("[N]o scientific publications demonstrat[e] how accurately Daysy [tells users when they are fertile]"), 23 (promoting Daysy "put[s] people in harms [sic] way").

2   *See* Compl. ¶¶ 18 (Valley is not "interested in providing accurate information to its potential consumer base"), 19 (Valley "made many other outrageous claims[;] ... far too many to list"; "has no shame or integrity"; and "recklessly rejected" the retraction of a study), 21 (Valley is "particularly unethical").

| | |
|---|---|
| 3 | This disclosure and the inclusion of hyperlinks to other sources also provide "the basis for [Polis's] personal opinion, leaving it to the readers to evaluate [her claims] for themselves." *Brian*, 87 N.Y.2d at 53–54. We thus identify no factual allegations admitting a plausible inference that Polis's opinions implied knowledge of undisclosed facts. *Cf. Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) (noting as actionable "a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener"). |
| 4 | We recognize that in some contexts, a charge of ethical violations may be actionable, *see, e.g., Trump v. Chi. Tribune Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985) ("[W]hen the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed."), but here, and generally, that is not the case under New York law, *see, e.g., Abbitt v. Carrube*, 72 N.Y.S.3d 53, 55 (1st Dep't 2018); *Jessel Rothman, P.C. v. Sternberg*, 615 N.Y.S.2d 748, 749–50 (2d Dep't 1994); *Park v. Cap. Cities Commc'ns*, 585 N.Y.S.2d 902, 904–05 (4th Dep't 1992); *Hollander*, 536 N.Y.S.2d at 791–92. |

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Lawrence v. Hearst Communications, Inc., Not Reported in Fed. Rptr. (2022)
2022 WL 893674

Case 1:21-cv-07299-RA   Document 87   Filed 03/31/22   Page 6 of 8

2022 WL 894716
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

James LAWRENCE, Plaintiff-Appellant,

v.

HEARST COMMUNICATIONS, INC., Defendant-Appellee.

21-813
|
March 28, 2022

Appeal from a judgment of the United States District Court for the District of Connecticut (Shea, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: James Lawrence, pro se, Westport, CT.

FOR DEFENDANT-APPELLEE: Jonathan R. Donnellan, Stephen Yuhan, Office of the General Counsel, The Hearst Corporation, New York, NY.

PRESENT: DENNIS JACOBS, RICHARD C. WESLEY, STEVEN J. MENASHI, Circuit Judges.

**SUMMARY ORDER**

*1 In February 2020, James Lawrence, pro se, sued Hearst Communications, Inc. ("Hearst") for defamation based on its reporting of his March 2018 arrest for breach of the peace in Westport, Connecticut. The arrest arose from an incident on November 5, 2017, in which Lawrence followed a woman around a grocery store and out to her car. Lawrence alleged that one of Hearst's subsidiaries falsely used the words "harass" and "haunt" to describe his behavior in its online news articles about the incident and several comparable past incidents. The first article, published on March 12, 2018 ("Article 1"), does not contain the allegedly defamatory terms. The defamation is alleged as to a similar article published on March 23, 2018 ("Article 2"), and a third article, published on February 11, 2018 ("Article 3"), which described his arrest for second-degree harassment. He also alleged a claim for intentional infliction of emotional distress. Hearst subsequently moved to dismiss, arguing that the news reports were substantially true and that the emotional distress claim was derivative of the defamation claim. After treating the motion to dismiss as a motion for summary judgment—and providing an opportunity for both parties to submit evidence and supplemental briefs—the district court granted Hearst summary judgment on the ground that its reports were substantially true and not defamatory and that the emotional distress claim was derivative. Lawrence appeals. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment *de novo*, "resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Case 1:21-cv-07299-RA   Document 87   Filed 03/31/22   Page 7 of 8

Lawrence v. Hearst Communications, Inc., Not Reported in Fed. Rptr. (2022)
2022 WL 893674

Defamation claims are "rooted in [Connecticut's] common law" but are "heavily influenced by the minimum standards required by the [F]irst [A]mendment." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015). To prevail on a defamation claim in Connecticut, a plaintiff must show that (1) the defendant published a defamatory statement that (2) identified the plaintiff to a third person, (3) was published to a third person, and (4) led to the plaintiff's reputation suffering an injury. *Id.* A statement is defamatory when it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 431. Of course, "for a claim of defamation to be actionable, the statement must be false." *Id.* Private plaintiffs have the burden of proving falsity against media defendants for speech of public concern. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).

**\*2** Media defendants do not incur liability for reporting that is "substantially true" even if it is not literally true. *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 321-23 (1984) (rejecting a "fussy insistence upon literal accuracy"); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) ("The common law of libel ... overlooks minor inaccuracies and concentrates on substantial truth."). In determining substantial truth, the "issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 113 (1982). A defendant's statement is substantially true when "the main charge, or gist, of the libel is true" and, consequently, "minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Strada*, 193 Conn. at 322 (internal quotation marks omitted). "Particular words or statements must be viewed, not in isolation, but in terms of the context of the entire communication." *Woodcock v. J. Publ'g Co., Inc.*, 230 Conn. 525, 554 (1994) (Berdon, J., concurring); *see Greenbelt Co-op. Publ'g. Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (assessing the term "blackmail" in context to gauge how a "reader ... understood exactly what was meant" when assessing libel claim of a plaintiff never criminally charged with blackmail).

Here, the district court properly granted summary judgment because the evidence showed that Hearst's reporting was substantially true.[1] The allegedly defamatory articles that Hearst published about Lawrence (the "Articles") properly communicated the "gist" of the Westport Police Department ("WPD") reports,[2] which was that multiple women had complained to the police about Lawrence's unwelcome behavior following them around stores and to their cars.[3] Although Lawrence alleges that Hearst falsely implied that he was charged and convicted of harassment as a result of the complaints, the Articles explicitly stated otherwise. Article 2 said that Lawrence had "no criminal history in Connecticut," and Article 3 clarified that while "Lawrence was logged by Westport police in 10 incidents where women felt harassed by him ... in each case, they felt afraid to pursue charges," indicating that no conviction had occurred.

Lawrence contends that Hearst's use of the terms "harass" or "haunt" in the Articles was defamatory. While those specific words were not used in the WPD's arrest warrant application for the November 5, 2017 incident, that does not change the analysis. First, Connecticut defamation law focuses not on "particular words or statements ... in isolation" but requires examining "the context of the entire communication." *Woodcock*, 230 Conn. at 554. The overall depiction of Lawrence's conduct in the Articles was grounded in the complaints made against Lawrence for his pattern of behavior in following women around public places, which the WPD affidavit and incident reports showed to be substantially true. Second, none of the Articles reported that Lawrence was arrested for harassment for the November 5, 2017 incident,[4] and all explicitly reported that his arrest was for breach of the peace. The use of the term "harassment" therefore did not rise even to the level of the "minor inaccuracies" that the Supreme Court has deemed insufficient to establish defamation. *See Masson*, 501 U.S. at 516.

**\*3** Third, Lawrence's behavior satisfies the commonly understood definition of "harassment." As we stated in *Lawrence v. Altice USA*, 841 F. App'x 273 (2d Cir. 2021) (summary order), Lawrence's first defamation lawsuit regarding media coverage of his March 2018 arrest,[5] "[a] media defendant's characterization of criminal allegations against a private plaintiff is substantially true if the characterization comports with the common understanding of the terms employed." *Id.* at 276. The district court determined that Lawrence's behavior met the Merriam-Webster definition of harassment, including "to annoy persistently" and "to create an unpleasant or hostile situation ... especially by uninvited and unwelcome verbal or physical conduct." The WPD affidavit and incident reports described Lawrence's pattern of conduct as following women around, "star[ing] at them," and

"get[ting] right into their personal space." As reported to the WPD, his behavior "scared the complainants to the point of them calling the police"; furthermore, his threatening behavior made them "fear[ ] for their safety" such that they refused to provide sworn statements against him. His behavior thus could be described with the dictionary definition of harassment.

Hearst's use of the word "haunt" similarly "comports with the common understanding of the terms employed." *Id.* As the district court noted, the term "fairly characterized" Lawrence's interaction with Wendy Chambers, a woman quoted in Article 2. Chambers stated that Lawrence "scared the crap out of me" and was "a creep," suggesting that his behavior had a "disquieting or harmful effect" on her. Even notwithstanding such a definition, the term "haunt" falls within the "leeway" granted to publishers who "recount and popularize" an event. *Strada*, 193 Conn. at 320; *see also id.* at 317 ("Facts do not cease to be facts because they are mixed with the fair and expectant comment of the story teller, who adds to the recital a little touch by his piquant pen.") (quoting *Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers*, 260 N.Y. 106, 119 (1932)). Hearst's use of the terms "harass" and "haunt" would not have affected average readers' perceptions of Lawrence. Indeed, the "gist" of Hearst's Articles was that (1) the WPD had stated that Lawrence had engaged in certain behaviors and (2) such behavior met the common definition of harassment. Therefore, when viewed in full context, the district court did not err in holding that Hearst's reporting on the police documents was substantially true and not defamatory.

Finally, as in *Altice*, Lawrence's emotional distress claim is meritless. An action for intentional infliction of emotional distress requires the plaintiff to establish "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266-67 (1991). Conduct meets the "extreme and outrageous" standard when it goes "beyond all possible bounds of decency" to be "utterly intolerable in a civilized community." *Morrissey v. Yale Univ.*, 268 Conn. 426, 428 (2004) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003)). Hearst's substantially true reporting does not meet this high standard. The district court properly granted summary judgment on the claim.

 **\*4** We have considered all of Lawrence's remaining arguments, which we conclude are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 894716

Footnotes

| | |
|---|---|
| 1 | Hearst also argues that its reporting is protected by the fair report privilege. Because Hearst's reporting was substantially true, we need not decide whether the fair report privilege applies. |
| 2 | The WPD reports included an affidavit accompanying the arrest warrant application for Lawrence's March 2018 arrest and an incident report for his February 2019 arrest. |
| 3 | Hearst's use of the term "women" also was not libelous. Although only one woman was involved in the November 5th incident, the police report noted numerous complaints dating back to 2002. |
| 4 | Article 3 reported that Lawrence was arrested for second-degree harassment in February 2019, which Lawrence does not contest. However, he still argues that Article 3 is defamatory based on its description of his prior criminal history. |
| 5 | In *Altice*, we affirmed the district court's grant of summary judgment in favor of Altice USA, reasoning that its coverage of Lawrence's March 2018 arrest and similar prior incidents was substantially true, his defamation claim failed, and his emotional distress claim also was meritless. *See Altice*, 841 F. App'x at 275, 277. *Altice* involved coverage of the November 5, 2017 incident, the March 2018 arrest, and the history of complaints against Lawrence, but not his February 2019 arrest. The *Altice* reporting also included use of the term "stalking" to describe Lawrence's behavior. Other than those two differences, the reporting—including both factual information and descriptive terms—that was before us in *Altice* is similar to Hearst's coverage. *Id.* at 274-75, 277. |