UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

> EDWARD HENRY,
>
>                          Plaintiff,
>
>                 v.
>
> FOX NEWS NETWORK LLC and
> SUZANNE SCOTT,
>
>                          Defendants.

| USDC-SDNY |
| --- |
| **DOCUMENT** |
| **ELECTRONICALLY FILED** |
| **DOC#:** |
| **DATE FILED:** 09/20/2022 |

21-CV-7299 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Edward Henry brings this lawsuit for defamation, invasion of privacy, and tortious interference against his former employer Fox News Network LLC and Fox News' Chief Executive Officer Suzanne Scott.  Henry's claims arise from four statements issued by Fox and Scott that reported on the circumstances of Henry's termination.  The statements indicated that, after receiving a complaint from a former employee against Henry regarding sexual misconduct, Fox retained an outside law firm to conduct an investigation and ultimately terminated Henry based on the findings of that investigation.  According to Henry, Defendants' statements were false because he was not in fact terminated based on the findings of the investigation, but instead to further a narrative that Fox was reforming its culture and in an effort for Scott to advance her career.  Moreover, because Fox had permitted other consensual affairs between employees and because he claims that his sexual activity with former Fox Business producer Jennifer Eckhart—who has accused him of sexually assaulting and raping her—was in reality consensual, Henry asserts that Defendants' statements announcing his termination for "willful sexual misconduct" created the intentionally false impression that his conduct must have been "akin to rape."

For the reasons that follow, the Court finds that Henry has failed to plausibly allege that any of Defendants' statements were false, or that they gave rise to a defamatory inference. His First Amended Complaint (the "complaint") also lacks factual allegations to sustain his remaining claims for false light/invasion of privacy and tortious interference. The complaint is thus dismissed in its entirety, albeit with leave to amend if Henry has a good faith basis to do so.

**BACKGROUND**[1]

Plaintiff Edward Henry is a former employee of the Fox News Channel who appeared on air from approximately 2011 to 2020. Compl. ¶¶ 1, 27. Defendant Suzanne Scott is the Chief Executive Officer of the Fox News Channel and the Fox Business Channel, which are owned by Defendant Fox News Network, LLC. *Id.* ¶ 2.

## I.       Henry's Termination

In June of 2020, Fox received a draft legal complaint from Eckhart accusing Henry of sexual assault. *Id.* ¶ 15. According to Henry, her allegations were entirely false, and were made to "extort money from Mr. Henry and Fox News." *Id.* ¶ 50. Henry admitted to having an affair with Eckhart between 2014 and 2017, but he maintained that their relationship was consensual. *See id.* ¶¶ 28, 66.

After receiving Eckhart's complaint, Defendants hired an outside law firm to conduct an investigation. *Id.* ¶¶ 16, 39. Henry "cooperated fully" with the investigation, and provided "the firm with all of his text messages and emails, among other documents." *Id.* ¶ 39. In Henry's view, the documentary evidence he provided demonstrated that Eckhart "was a willing participant in the flirting and 'sexting,'" and the allegations of sexual assault in her draft complaint were obviously false. *Id.* ¶¶ 40–41; *id.* ¶ 17 ("Mr. Henry provided investigators with texts, emails, and photographs

---

[1] The following facts are drawn from Plaintiff's complaint, which the Court assumes to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

proving that Ms. Eckhardt [sic] was making false claims, and Defendants were aware of that evidence before they decided to publicly impugn Plaintiff.").  While Eckhart's allegations are the subject of another lawsuit pending before this Court, for purposes of this motion the Court must accept as true Henry's factual allegation that his relationship with Eckhart was a "consensual affair with a non-subordinate."  *Id.* ¶ 66; *see Stadnick*, 861 F.3d at 35 (stating a district court evaluating a Rule 12(b)(6) motion must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations.").

After the six-day investigation was complete, Henry was terminated.  Compl. ¶¶ 9, 16. Henry contends that the entire investigation "was a sham, because it lasted less than a week and it ignored all of the evidence that Ms. Eckhart was lying." *Id*. ¶ 16.  The outcome, he asserts, was "predetermined." *Id.* ¶ 138 ("[A]ll of Fox's 'independent' investigations have one thing in common: the outcomes are predetermined."); *see also* n.6 (describing the "outcome" of "the 'independent' investigation of Mr. Henry" as a "foregone conclusion").  Henry alleges that Defendants, and, in particular, Scott, sought to terminate him to "burnish [Scott's] image as a tough, no nonsense female executive who cleaned up Fox," *id.* ¶ 11, as well as to curry favor with the Murdoch family, the owners of Fox News, *see id.* ¶¶ 57–66.  When Defendants issued the statements regarding his termination, Henry claims, they knew that Eckhart's allegations were not true, that "Eckhart was planning to publicly accuse Mr. Henry of rape," that "Eckhart had a history of making false allegations," and that her allegations were "intended to extort money" from Henry. *Id.* ¶ 50.

## II.    The Allegedly Defamatory Statements

At issue in this lawsuit are four statements made by Defendants following Henry's termination.  On July 1, 2020, Scott and Fox News President Jay Wallace issued Defendants' first statement concerning Henry.  *Id.* ¶ 14 ("July 1, 2020 statement").  In that statement, Fox announced

that after having "received a complaint about Ed Henry from a former employee's attorney involving willful sexual misconduct in the workplace years ago," Fox "immediately retained an outside law firm," to conduct an investigation, and terminated Henry "based on [the] investigative findings." *Id.* The statement told Fox employees that "FOX News Media strictly prohibits all forms of sexual harassment, misconduct, and discrimination" and encouraged "any employee who has a sexual harassment, discrimination or misconduct complaint of any form to report it immediately." *Id.* The entire statement is reproduced here:



Dear colleagues,

We would like to bring a very serious matter to your attention in an effort toward full transparency given the many actions we have taken to improve the culture here over the last four years.

On Thursday, June 25, we received a complaint about Ed Henry from a former employee's attorney involving willful sexual misconduct in the workplace years ago. We immediately retained an outside law firm (which has never represented FOX News in investigations or litigation) to independently investigate the claims. Ed was suspended the same day and removed from his on-air responsibilities pending investigation. Based on investigative findings, Ed has been terminated.

Rotating news anchors will co-anchor *America's Newsroom* from New York alongside Sandra Smith until a permanent replacement is named.

FOX News Media strictly prohibits all forms of sexual harassment, misconduct, and discrimination. We will continue striving to maintain a safe and inclusive workplace for all employees.

As all of you know, in January 2017 we overhauled our entire Human Resources operation and instituted extensive mandatory annual Inclusion and Harassment Prevention training which has since educated our entire workforce. We encourage any employee who has a sexual harassment, discrimination or misconduct complaint of any form to report it immediately, as we have said repeatedly over the last four years. Methods of reporting include contacting our HR team led by Executive Vice President Kevin Lord, or our Legal team led by Executive Vice President & General Counsel Lily Fu Claffee, or our anonymous 24/7 alert hotline. All contact information for Kevin and Lily, as well as the hotline number, can be found on Backstage in the employee handbook.

Thank you,
Suzanne & Jay

*Id.*

Three weeks after Henry was terminated, Eckhart and another individual, Catherine Areu, filed a joint lawsuit against Fox and several individual employees, including Henry. *See id.* ¶ 51–52; *see also Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (S.D.N.Y.); *Areu v. Fox News Network, LLC*, No. 20-CV-8678 (S.D.N.Y.).   In response to the lawsuit, on July 20, 2020, Fox released a statement that challenged the veracity of Areu's claims as to Tucker Carlson, Sean Hannity, and Howard Kurtz, *see id.* ¶ 52, (describing Areu's claims as "false, patently frivolous and utterly devoid of any merit"), but "did not challenge Ms. Eckhart's allegations against Mr. Henry," *id.* ("July 20, 2020 statement").   Fox clarified that "Ms. Areu and Jennifer Eckhart can pursue their claims against Ed Henry directly with him, as FOX News already took swift action as soon as it learned of Ms. Eckhart's claims on June 25 and Mr. Henry is no longer employed by the network." *Id.* ¶ 53.

On November 9, 2020, when Eckhart filed an amended complaint, Fox News issued a third statement reaffirming its position with respect to Henry's termination. *Id.* ¶ 55.   Henry alleges that the following aspect of that statement is defamatory:

> Upon first learning of the allegations, we promptly commenced an independent investigation and took immediate action, firing Mr. Henry within six days of the notification on July 1, 2020 . . . FOX News takes all claims of harassment, misconduct and retaliation extremely seriously and maintains a zero tolerance policy that is strictly enforced throughout the company which is why Mr. Henry was fired within days of Ms. Eckhart's complaint.

*Id.* ("November 9, 2020 statement").

Several months later, on July 1, 2021, Henry filed his initial complaint in this matter, which contained a number of allegations concerning the extramarital affair of Fox Business Channel President, Jay Wallace.   In response to Henry's accusations against Wallace, as well as his tort claims against Scott and Fox, Defendants issued the final statement at issue in this action. *Id.* ¶¶

69–74 ("July 1, 2021 statement"). That statement reiterated Fox's previously stated position regarding its reliance on the findings of an independent investigation and termination of Henry "for willful sexual misconduct." *Id.* ¶ 71. The following is the full-text of the July 1, 2021 statement:

> As we stated one year ago, Fox News Media conducted a thorough independent investigation into Ed Henry immediately after we were made aware of a serious misconduct claim against him by a former employee. Based on the results of those findings, we promptly terminated Mr. Henry's employment for willful sexual misconduct and stand by the decision entirely. We are fully prepared to vigorously defend against these baseless allegations as Mr. Henry further embarrasses himself in a lawsuit rife with inaccuracies after driving his personal life into the ground with countless extramarital affairs in a desperate attempt for relevance and redemption.

*Id*.

In addition to describing his relationship with Eckhart, and the circumstances surrounding each defamatory statement, Henry's complaint also includes allegations regarding the broader culture of sexual misconduct at Fox. In particular, he recounts "numerous other instances of sexual misconduct" by other Fox "executives and broadcasters." *Id.* ¶ 150. Henry contends that because Fox addressed other instances of similar misconduct by either retaining the employee notwithstanding the allegations, permitting them to resign, or quietly terminating them, the July 1, 2020 statement announcing his termination for sexual misconduct created the false impression that Henry's conduct was "akin to rape." *Id.* ¶ 23; *see also id.* ¶ 151 ("Ms. Scott knowingly and intentionally created the false impression that Mr. Henry had done something far more sinister than Mr. Wallace, Mr. Sammon, Mr. Ailes, Bill O'Reilly, and a host of former Fox News employees who were quietly terminated or allowed to resign."). This impression was purportedly exacerbated by Fox's July 1, 2021 statement defending Wallace. *Id.* ¶ 23. According to Henry, because Wallace is alleged to have had a consensual affair with a direct subordinate, defending

Wallace and standing by the termination of Plaintiff in the same statement "added to the false impression . . . that Mr. Henry must have done something more serious than Mr. Wallace did, *i.e.*, Mr. Henry must have done something akin to raping Ms. Eckhart." *Id.* ¶ 74.

Based on these statements, Plaintiff brings four causes of action: (1) defamation and defamation by implication, (2) defamation per se, (3) false light/invasion of privacy, and (4) tortious interference with contract/economic advantage.  Henry filed his initial complaint on July 1, 2021 in the District of New Jersey.  The parties then consented to a transfer to this District. After Defendants filed a motion to dismiss, Henry amended his complaint in response.  Defendants then filed the instant motion to dismiss, which the Court now grants in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]  In assessing a complaint, the Court must accept "all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Claims merely "consistent" with liability are insufficient, *Twombly*, 550 U.S. at 570, and the "factual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555.  Where a state law claim is filed in federal court, a court must apply state substantive law and federal procedural law.  *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426–28 (1996).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

## DISCUSSION

### I.     Defamation

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020). To state a claim for defamation under New York law—which the parties agree applies in this case[3]—a plaintiff must allege "(1) a written defamatory factual statement concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019). To survive a motion to dismiss, a plaintiff "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

Because the parties do not dispute that Henry is a public figure, *see* Pl.'s Opp. Br. at 14, he also "must prove that an allegedly libelous statement was made with actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809. "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (N.Y. 1985).

Even where a statement is literally true, it may still be actionable if it implies a defamatory meaning. While Plaintiff here only brings claims for defamation *per se*, defamation generally and

---

[3] Ordinarily, a court sitting in diversity applies the choice of law rules of the forum state, but "[t]ransfers under 28 U.S.C. § 1404(a) by a court that has jurisdiction are adjudicated in the transferee state under the law of the transferor state." *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 140 (2d Cir. 2022). In other words, because this case was voluntarily transferred from the District of New Jersey, the Court must address any choice of law issues as if it were sitting in the District of New Jersey. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).

    With respect to Henry's defamation claims, the parties agree that New York law applies, *see* Defs.' Br. at 8–18; Pl.'s Opp. Br. at 7; Transcript of Oral Argument at 23. Their consent is sufficient to establish choice of law. *See Allen v. Nat'l R.R. Passenger, Corp. (Amtrak)*, No. CV 14-3205 (BRM) (DEA), 2017 WL 751440, at *4 n.4 (D.N.J. Feb. 27, 2017).

defamation by implication, the Court also considers whether the standard for defamation *per quod* has been met, while recognizing that it is not entirely clear whether there is a separate cause of action for defamation *per quod* in New York. *See Kavanaugh v. Zwilling*, 997 F. Supp. 2d 241, 248–49, n.8 (S.D.N.Y. 2014).

Defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380–81 (N.Y. 1995). To state a claim for defamation by implication, "a complaint must make a rigorous showing that the language of the communication as a whole not only can be reasonably read both to impart a defamatory inference but also that it affirmatively suggest[s] that the author intended or endorsed that inference." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021); *see also Cabello-Rondón v. Dow Jones & Co., Inc.*, No. 16-CV-3346 (KBF), 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017) ("[U]nder New York law, a plaintiff alleging defamation by implication must show that defendants affirmatively intended such an implication.") (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 465–66 (S.D.N.Y. 2012)); see *also Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (N.Y. Sup. Ct. 2014).

While defamation by implication addresses a situation where the "false statement is contained not in the statement's literal wording but rather its innuendo," defamation *per quod* occurs when a statement is actionable "despite its apparent truth in light of extrinsic facts known to the audience." *Kavanaugh*, 997 F. Supp.2d at 248. "In a claim of defamation per quod, 'no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication.'" *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021) (quoting *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 251 (N.Y. Sup.

Ct. 2009)).  In other words, "[a] plaintiff would need to show that the challenged language was capable of communicating the alleged defamatory idea when words were given meaning not ordinarily attributed to them or due to external factors."  *Id.*  (quoting *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000).

For a claim of defamation *per quod*, "there is an additional requirement that the plaintiff plead 'special damages'—that is, actual harm."  *Kavanaugh*, 997 F.2d at 249 (quoting *Idema*, 120 F. Supp. 2d at 368).  The failure to plead special damages is a "fatal defect."  *Idema*, 120 F. Supp. 2d at 368; *see also Ava*, 885 N.Y.S.2d at 251, n.3; *Sharratt v. Hickey*, 799 N.Y.S.2d 299, 301 (N.Y. Sup. Ct. 2005).

### A.      Plaintiff Fails to State a Claim of Defamation or Defamation Per Se

Henry's complaint lacks factual allegations that, even if proven, would permit a reasonable inference that any of the four statements are false, which is required to state a claim for defamation or defamation per se.[4]

"[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel."  *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) (quoting *Giuffre v. Maxwell*, 15 Civ. 7433 (RWS), 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017)).  Conclusory allegations that the statements were "false" are insufficient to survive a motion to dismiss because a plaintiff is required "to plead facts that, if proven, would allow a reasonable person to consider the statement false."  *Tannerite Sports, LLC*, 864 F.3d at 247.

---

[4] The distinction between defamation and defamation per se turns on whether the statement is actionable on its face.  Robert D. Sack, *Sack on Defamation* § 2:8.3(C) (5th ed. 2022).  Because Henry's defamation and defamation per se claims fail because he does not plausibly allege falsity, this distinction is not relevant here.

Each of the four statements that Henry alleges are defamatory recount the steps taken by Defendants upon receipt of Eckhart's complaint and contain some combination of the following four factual assertions: (1) that Fox received a complaint from a former employee regarding sexual misconduct by Henry, (2) that Fox hired an outside law firm which conducted an independent investigation, (3) that Henry was suspended and then terminated (4) based on the results of the investigation.

Another court in this district dealt with a strikingly similar scenario in *Cortes v. Twenty-First Century Fox American, Inc.*, 285 F. Supp. 3d at 642.  There, Francisco Cortes, a former Fox News executive, brought a libel per se claim against the media conglomerate for a statement it issued following allegations of sexual misconduct against him by Tamara Holder, a Fox News contributor.  Holder alleged that Cortes sexually assaulted her, while Cortes maintained that their interaction was consensual.  *Id.* at 633.  The statement at issue in that case read, in part, that Holder "reported an incident of sexual assault at Fox News headquarters from the prior year.  Immediately after Ms. Holder notified Fox News of the alleged incident, the company promptly investigated the matter and took decisive action, for which Ms. Holder thanks the network. . . . Fox News is grateful to Ms. Holder for her many contributions during her tenure at the network and wishes her continued success."  *Id.* at 635.

There, the court found that the statement "describe[d] that Holder reported an incident, that Fox News promptly investigated it and took action, and that Fox News expressed gratitude toward Holder."  *Id.* at 642.  Because the portions of the statement "that Holder reported a sexual assault or that Defendants responded (by terminating Plaintiff's employment), [were] uncontested as true," the court dismissed Cortes's libel claim for failure to plausibly allege falsity.  *Id.*

As was the case in *Cortes*, here too Plaintiff has failed to plausibly allege that any of the factual assertions made in the four statements were false.  To start, the July 1, 2020 statement included the following summary of the events: (1) "On Thursday, June 25, [Fox] received a complaint about Ed Henry from a former employee's attorney involving willful sexual misconduct," (2) Fox "immediately retained an outside law firm . . . to independently investigate the claims," (3) "[Henry] was suspended the same day," and (4) "[b]ased on the investigative findings, [Henry] has been terminated."  Compl. ¶ 14.

It is uncontested that Fox received a complaint involving willful sexual misconduct, immediately retained an outside law firm to investigate, and that Henry was suspended that same day.  Henry's counsel acknowledged as much at oral argument.  *See* Transcript of Oral Argument at 28–30.  Further, Henry has failed to plausibly allege that Fox did not fire him based on the findings of the independent investigation.

Henry insists that the assertion that he was terminated "based on investigative findings" is false because the investigation was a "sham."  Transcript of Oral Argument at 30; *see also* Compl. ¶¶ 137–38 ("[Fox's] investigation was a sham designed to bolster the false impression that Ms. Scott fired Mr. Henry because she was cracking down on sexual misconduct. . . . [A]ll of Fox's 'independent' investigations have one thing in common: the outcomes are predetermined.").  There are no facts alleged, however, to support this conclusion.  When pressed at argument as to which particular facts supported a finding that the investigation was indeed a "sham," Henry's counsel responded only by noting the "short duration of the investigation vis-à-vis other investigations that had gone on at Fox," Transcript of Oral Argument at 33, and Henry's cooperation in the investigation, including his voluntary production of text messages and emails supporting his contention that his relationship with Eckhart was consensual, *see id.* ("[T]he fact that [Henry] gave

up text messages . . . everything that came out in [the Eckhart] case demonstrate and in fact in both directions, both for Ms. Eckhart and from Mr. Henry, that the allegations are false."); *see also* Compl. ¶ 39. These facts do not support a plausible inference that the findings of the outside law firm were not genuine, or that Defendants did not in fact terminate Henry "based on [those] investigative findings." *Id.* ¶ 14. [5]

To the extent Henry is relying on the allegations pertaining to Scott to support an inference that the investigation was a "sham"—and that it was therefore untrue that Fox fired him based on its findings—this argument similarly fails. Henry repeatedly contends that Scott fired him "to save her own career and burnish her image as a tough, no nonsense female executive who cleaned up Fox." *Id.* ¶ 11; *see also id.* ¶ 13 ("Scott used Plaintiff as a scapegoat to divert attention away from her own failures in addressing what can only properly be characterized as rampant sexual abuses that permeate every facet of Fox News."); *id.* ¶ 137 (alleging Scott terminated Henry "to bolster the false impression that Ms. Scott fired Mr. Henry because she was cracking down on sexual misconduct"). But while the complaint is replete with references to Scott's purported motivations, there are no allegations that Scott was involved in the investigation in any way or directed its outcome. There is, moreover, no information regarding the role Scott played in the ultimate decision to terminate Henry. Even if the Court assumes that Scott was motivated to terminate Henry in order to "burnish her image as a tough, no nonsense female executive," that alone cannot support an inference that Scott, who is not alleged to have had any involvement in the investigation, either directed its outcome from the start or disregarded its conclusions when they contradicted her purported objective of terminating Henry.

---

[5] Henry's reliance on various paragraphs in the complaint to support his argument on falsity, see Pl.'s Opp. Br. at 8, is misplaced, as none of the cited paragraphs contain factual content which would support an inference that the statements Fox made were untrue.

Likewise, Henry has not plausibly alleged the falsity of the July 20, 2020 statement. *See* Compl. ¶ 52. As the statement relates to Henry, it states that "FOX News already took swift action as soon as it learned of Ms. Eckhart's claims on June 25,"—which is true—and that "Mr. Henry is no longer employed by the network"—also true.

The third statement issued on November 9, 2020 fares no better. The statement asserts that "[u]pon first learning of the allegations, [Fox] promptly commenced an independent investigation and took immediate action, firing Mr. Henry within six days of the notification on July 1, 2020." *Id.* ¶ 55. As described above, Plaintiff does not contest that this is factually true. The remaining portion of this third statement is similarly non-actionable. It reads: "Fox News takes all claims of harassment, misconduct and retaliation extremely seriously and maintains a zero tolerance policy that is strictly enforced throughout the company which is why Mr. Henry was fired within days of Ms. Eckhart's complaint." *Id.* Henry has not plausibly alleged that Fox News did not fire him within days of Eckart's complaint—following the independent investigation—in light of its "zero tolerance policy" with regard to "claims of harassment, misconduct and retaliation."

The July 21, 2021 statement suffers from the same deficiencies—Henry has not plausibly alleged that it is untrue that Fox "conducted a thorough independent investigation into Ed Henry immediately after [it was] made aware of a serious misconduct claim against him by a former employee," or that "[b]ased on the results of those findings, [Fox] promptly terminated Mr. Henry's employment for willful sexual misconduct and stand by the decision entirely." *Id.* ¶ 71.

Henry argues that the final sentence in the July 21, 2021 statement, that "Mr. Henry further embarrasses himself in a lawsuit rife with inaccuracies after driving his personal life into the ground with countless extramarital affairs in a desperate attempt for relevance and redemption," *id.*, is also actionable. But the only portion of this statement that is capable of being "proven false,"

14

and thus possibly defamatory, *Cortes*, 285 F. Supp. 3d at 642, is the statement related to his extramarital affairs. The remainder of the sentence constitutes nonactionable opinion as it is clear that the characterizations of his conduct as "driving his personal life into the ground" and of his lawsuit as a "desperate attempt for relevance and redemption," are incapable of being proven true or false. *See Jacobus v. Trump*, 156 A.D.3d 452, 453 (Sup. Ct. 2017). Again, however, there are no facts that support an inference that the reference to Henry's extramarital affairs is factually false. After all, he has clearly alleged that he did have at least one "affair"—with Eckhart. *See* Compl. ¶ 66. There are no allegations that this was or was not his only extramarital affair, and as a result, the Court cannot infer the statement regarding his "countless extramarital affairs" is false.

The Court thus concludes that there is no plausible basis to infer that Defendants' statements were false, and Henry's defamation and defamation per se claims must fail.

**B.   Plaintiff Fails to State a Claim of Defamation by Implication or Defamation *Per Quod***

**1.   Henry's Contention that the Statements Imply that He Engaged in "Willful Sexual Misconduct" Fails**

Henry's contention that Fox's statements are further actionable as either defamation by implication or defamation *per quod* because they imply that he did engage in "willful sexual misconduct" also fails.

"[G]iven that a plaintiff must prove falsity to prevail in any libel action—whether *per se*, *per quod*, or by implication—truth is an absolute defense." *Kavanaugh*, 997 F. Supp. 2d at 249; *see also Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001). To be sure, statements themselves may be literally true yet still actionable as defamatory by implication or *per quod*— but in order to sustain either one of these claims, the implication or innuendo from those statements must be false in order to be defamatory. *See Kavanaugh*, 997 F. Supp. 2d at 249.

Even if the statements here were read to imply that Henry did in fact engage in willful sexual misconduct, they would still fail to sustain a defamation claim because Henry has not plausibly alleged that they are false.  Among other things, it is unclear from the complaint what Henry is claiming constitutes such sexual misconduct.  The term "willful sexual misconduct" is vague in that it could encompass many different forms of conduct.  The statements themselves imply that a variety of conduct may fall into the category of willful sexual misconduct.  *See* Compl. ¶ 14 ("[Fox] strictly prohibits all forms of sexual harassment, misconduct, and discrimination."); *id.* ¶ 55 ("[Fox] maintains a zero tolerance policy that is strictly enforced throughout the company").  Indeed, Henry's own complaint and briefing repeatedly use the phrase "sexual misconduct" to describe consensual work-place affairs, *see id.* at 16, as well as other misconduct, *id.* ¶¶ 106, 123, and as a catch-all descriptor, *see id.* ¶¶ 31, 144.  Under this definition, Henry's admitted "consensual affair with a non-subordinate" coworker could itself constitute willful sexual misconduct, making meritless his allegation regarding the falsity of the statements referencing such sexual misconduct.

The Court thus concludes that, to the extent the statements imply that Henry actually engaged in willful sexual misconduct, they are not defamatory either by implication or *per quod*.

### 2.    Henry's Contention that the Statements Imply that He Raped Eckhart or Committed Serious Sexual Assault Fails

Finally, Henry argues that the statements impart a false and defamatory inference because a reasonable reader would draw the conclusion that his conduct was "akin to rape." *Id.* ¶¶ 23, 151. He asserts that the statements suggest such an inference because they:

> [D]escribe Mr. Henry's actions as "involving willful sexual misconduct" and go[] on to add that Fox "strictly prohibits all forms of sexual harassment, misconduct and discrimination." . . .  The implication of the statement is crystal clear and the reader is left with one indelible impression: Mr. Henry had committed sexual assault or, at minimum, non-consensual sexual contact.

Pl.'s Opp. Br. at 12.  Henry suggests that a reader would come to this conclusion in light of the serious allegations of assault contained in Eckhart's legal complaint, and because of the broader context of the history of "sexual abuses" at Fox.  Compl. ¶ 13.  It is his view that, due to previous instances of misconduct and Fox's reaction to them, readers would infer that his conduct must have been significantly more severe than the conduct at issue in those other instances because he was publicly terminated while others were permitted to stay on or quietly resign.  According to Henry, a reasonable reader would approach these statements with an understanding that Fox routinely permitted sexual misconduct in its workplace, and thus the statement that he was terminated for "sexual misconduct," would impart a false inference that his sexual misconduct must have been particularly egregious and amounted to "a non-consensual sexually-related touching, if not outright assault or rape."  Pl.'s Opp. Br. at 11.

In so doing, Henry appears to conflate claims for defamation by implication and defamation *per quod*.[6]  The Court analyzes each of these theories in turn.

### a.    Defamation By Implication

To the extent that Henry argues that the inference that he raped or sexually assaulted Eckhart is actionable as defamation by implication, this argument fails because he has not plausibly alleged that Fox intended or endorsed that defamatory inference.  As noted above, to plead a defamation by implication claim, a plaintiff "must make a rigorous showing that the language of the communication as a whole . . . affirmatively suggest[s] that the author intended or endorsed [the defamatory] inference."  *Kesner*, 515 F. Supp. 3d at 173.

---

[6] Although Plaintiff appears to analyze defamation by implication and defamation *per quod* together, *see, e.g.*, Pl.'s Opp. Br. n.5, the two claims have been characterized as legally distinct causes of action and analyzed under different standards.  *See, e.g.*, *La Liberte v. Reid*, 966 F.3d 79, 93–94 (2d Cir. 2020); *compare Sack on Defamation* § 2:4.4 *with* § 2:8.3.

This is an "objective inquiry," and the Court is not tasked with determining the "declarant's *mens rea* or fault." *Partridge v. State of New York*, 173 A.D.3d 86, 94 (N.Y. App. Div. 2019). Rather, the Court asks whether the statement itself "by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference." *Id.* Because the declarant's subjective intent is "irrelevant," *id.*, Henry's allegations regarding Scott's individual motivation to "sacrifice" him have no bearing on the defamation by implication inquiry.

Looking at the statements themselves, the Court finds that they offer no basis to conclude that Defendants intended or endorsed the defamatory inference Henry suggests. Rather than intentionally imply serious sexual assault or rape, the use of the nebulous phrase "willful sexual misconduct" instead seems calculated to prevent such an inference. Additionally, the reference to Fox's "zero tolerance policy," Compl. ¶ 55, and the statement that "FOX News Media strictly prohibits all forms of sexual harassment, misconduct, and discrimination," *id.* ¶ 14, suggest that Fox did not intend for the reader to understand that Henry necessarily assaulted or raped Eckhart. Finally, Defendants referenced only receiving a complaint "involving willful sexual misconduct in the workplace." *Id.* None of Fox's statements, however, include any detail as to precisely what Eckhart's allegations were. And at no time does Fox say that Henry was fired because of any of Eckhart's specific allegations or that Fox deemed them to be true.[7]

### b.    Defamation *Per Quod*

To the extent that Henry seeks to argue that this defamatory inference is actionable as defamation *per quod* in light of extrinsic facts known to the audience—here, Eckhart's public legal

---

[7] The Court need not address Defendants' argument that a public figure plaintiff may not bring a defamation by implication claim regarding matters of public concern because Henry's defamation by implication claim fails on the merits.

complaint and prior treatment of other Fox employees—this argument fails at the very least because Henry does not plead any facts in support of his claim for special damages. As described above, "New York law is unambiguous that such pleading is an unbending requirement of defamation *per quod* claims, to the extent such claims exist independently under New York law." *Kavanaugh*, 997 F. Supp. 2d at 255. "New York law requires the identification of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation by defamation; not from the effects of defamation." *Id.*; *see also Sack on Defamation* § 2.8.6. "Special damages 'must be fully and accurately stated, with sufficient particularity to identify actual losses.'" *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (quoting *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000)). "[R]ound figures or a general allegation of a dollar amount . . . will not suffice." *Id.* "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Id.* (citing *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co., Inc.*, 893 N.Y.S.2d 414, 417 (N.Y. App. Div. 2009)); *see also, e.g.*, *Kavanaugh*, 997 F. Supp. 2d at 255.

Here, Henry asserts that the allegedly defamatory acts "have caused special damage to [him], and continue to do so, in that Plaintiff has suffered and continues to suffer loss of economic opportunities, including, but limited to [*sic*], a loss of revenues as well as loss of reputation in an amount to be proven at trial." Compl. ¶ 161; *see also id.* ¶ 157.[8] These conclusory allegations are clearly insufficient under the special damages pleading requirements.

---

[8] Plaintiff also alleges he "has suffered, and will continue to suffer, mental pain and anguish, emotional distress, harassment, anxiety, embarrassment and humiliation in an amount to be proven at trial," Compl. ¶ 162, but special damages must be economic in nature. *Kavanaugh*, 997 F. Supp. 2d at 255.

## II.        False Light/Invasion of Privacy

The parties disagree as to which state's law applies to Henry's false light/invasion of privacy claim.  Defendants contend that, like his other claims, Henry's false light claim is properly adjudicated under New York law.  Defs.' Br. at 20–21.  Plaintiff, on the other hand, argues that it should be decided under Maryland law based on his domicile in the state, among other factors. Pl.'s Opp. Br. at 5–7.  Whether the Court applies New York or Maryland law, however, Henry's claim must be dismissed.  His claim cannot survive under New York law because New York does not recognize a separate cause of action for false light/invasion of privacy.  *Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005) ("Under New York law, invasion of privacy based on publicity which placed Matthews in false light is not a cognizable claim.").  Under Maryland law, as Henry acknowledges, the elements required to establish a false light claim are "analogous to a claim for defamation by implication under New York law."  Pl.'s Opp. Br. at 22–23.[9]  Because his complaint lacks sufficient facts to support his defamation by implication claim, and there are no additional facts related to his invasion of privacy claim, his claim fails under Maryland law as well. Accordingly, Henry's claim for false light/invasion of privacy is dismissed.

## III.       Tortious Interference with Contract or Economic Advantage

Lastly, Henry also fails to plead facts sufficient to support his claim for tortious interference with contract or economic advantage.  "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-

---

[9] The parties agree that, if his claim is evaluated under Maryland law, Henry must allege three elements for his claim to survive: "(1) defendant gave publicity to a matter concerning the plaintiff that placed her before the public in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) defendant acted with knowledge of or reckless disregard for the falsity of the publicized matter and the false light in which the plaintiff would be placed."  *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 352–53 (D. Md. 2012) (citing *Campbell v. Lyon*, 26 F. App'x 183, 188 (4th Cir. 2001)).

party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotations omitted) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996)).[10]  To allege a breach, a plaintiff "must identify what provisions of the contract were breached as a result of the acts at issue." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 450 (S.D.N.Y. 2014); *see also Risley v. Rubin*, 272 A.D.2d 198, 199 (N.Y. App. Div. 2000).  Further, because the breach must have been committed by a third-party to the contract, a plaintiff asserting a tortious interference claim must show that the defendant was not a party to the contract with which he allegedly interfered. *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005).  Henry has failed on several of these elements.

First, there are no facts present in the complaint to support an inference that Henry's termination constituted a breach of any contract.  The only allegation related to his employment contract is that "Ms. Scott caused Fox News to breach Plaintiff's employment agreement by terminating him without cause."  Compl. ¶ 184.  This paragraph is conclusory and insufficient to establish a breach. *See Ace Arts*, 56 F. Supp. 3d at 450 ("Merely asserting in a conclusory manner that an agreement was breached is not enough to survive a motion to dismiss.").  Moreover, a plaintiff "must identify what provisions of the contract were breached as a result of the acts at issue," *see id.*, which Henry has failed to do here.

Further, Henry has not alleged that Scott was a "third party" to his employment contract. Relying on *Trahan v. Lazar*, 457 F. Supp. 3d 323, 359 (S.D.N.Y. 2020), Henry argues that Scott may still be liable for tortious interference if she acted "purely from malice or self-interest," and thus outside the scope of her employment. *See* Pl.'s Opp. Br. at 23–24.  While Henry's complaint

---

[10] Neither party disputes that New York law applies to the tortious interference claims.

alleges that Scott terminated him in order to advance her own career at his expense, *see, e.g.*, Compl. ¶ 57, the complaint is lacking in allegations that support a reasonable inference that termination of an employee who was found to have engaged in willful sexual misconduct was "purely from malice or self-interest." Typical cases of "malice or self-interest" in this context may involve fraud, as in *Trahan*, 457 F. Supp. 3d at 359, or situations where the supervisors terminated the employee to prevent the discovery of their own wrongdoing, *see Albert v. Loksen*, 239 F.3d 256, 276 (2d Cir. 2001); *Cohen v. Davis*, 926 F. Supp. 399, 405 (S.D.N.Y. 1996). Where the supervisor's decision to terminate an employee was within their ordinary duties, courts have routinely denied claims of tortious interference. *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010); *Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 215 (E.D.N.Y. 2009). Accordingly, Henry's tortious interference with contract claim is dismissed.

Henry's tortious interference with prospective economic advantage claim was pled with even less detail, and likewise fails. To "state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch*, 449 F.3d 388, 401 (2d Cir. 2006). "A plaintiff must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 421 (S.D.N.Y. 2013). Henry's complaint failed to allege these elements even in a conclusory manner. As discussed with respect to his tortious interference with contract claims, there are no facts indicating that Scott or Fox acted out of malice or used improper means to effectuate his termination. Moreover, he failed to identify any business

relationship with any third party, which is itself fatal to his claim. *See Katz v. Travelers*, 241 F. Supp. 3d 397, 408 (E.D.N.Y. 2017) (collecting cases).[11]   Accordingly, Henry's claims for tortious interference with contract and tortious interference with economic advantage are dismissed.

### IV.   Leave to Amend

Plaintiff has requested leave to amend his complaint in the event the Court granted Defendants' motion to dismiss.  Pl.'s Opp. Br. at 25–26.  Defendants contend that the defects cannot be cured by amendment, and that because Plaintiff was given an opportunity to amend his complaint in response to Defendants' first motion to dismiss, he should not be given another chance to do so.  Defs.' Reply Br. at 14 n.7.  Although the Court is doubtful that Henry can cure the substantial pleading deficiencies outlined in this opinion, he is nonetheless granted leave to file a second amended complaint in accord with the general rule in this Circuit.

Rule 15 provides that "the court should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This is a "permissive" standard, and the Second Circuit has instructed that leave to amend should be liberally granted, consistent with the Circuit's "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  While it is true that many of the defects identified in this opinion were also highlighted by Defendants' first motion to dismiss, the Second Circuit has repeatedly emphasized that a plaintiff should be given an opportunity to amend with the benefit of the court's reasoning.  *Id.*  ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of

---

[11] Henry has also failed to allege any facts indicating how his tortious interference with prospective economic advantage differs from his defamation claim, and the claim could also be dismissed on that basis. *See Huizenga v. NYP Holdings, Inc.*, No. 17-CV-2113-LTS-GWG, 2019 WL 1620743, at *3 (S.D.N.Y. Apr. 16, 2019) ("A claim for intentional interference with a prospective economic relationship where the injury flows entirely from harm to a plaintiff's business reputation is duplicative of a defamation claim, and is disallowed under New York law.").

curing specific deficiencies."); *see also Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously.").  Accordingly, Henry is granted leave to file a second amended complaint.

## CONCLUSION

For the foregoing reasons, Henry's complaint is dismissed in its entirety for failure to state a claim, but the Court grants him leave to amend.  If he chooses to file a second amended complaint, he shall do so by October 20, 2022.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 68.

SO ORDERED.

Dated:     September 20, 2022
           New York, New York

                                              _____
                                              RONNIE ABRAMS
                                              United States District Judge